# DAVID WILLARD v. CHARLES H. MARR and Others.[1]

February 21, 1913.

Nos. 17,936—(190).

**Vacating judgment — service of summons.**
1. In an action to set aside a judgment upon the alleged ground that the summons therein was not served upon defendant, it is *held* that the findings of the trial court that the summons was served by leaving a true and correct copy thereof with the wife of defendant at the house of his usual abode are sustained by the evidence.

**Findings — evidence.**
2. The findings are not clearly or palpably against the evidence.

**Jurisdiction — error in name of defendant.**
3. The use of a wrong initial in the name of a defendant is not fatal to the jurisdiction of the court, where the summons is in fact served upon the right party. The rule is different where the service is by publication.

Action in the district court for Itasca county to annul a certain judgment entered upon default and to discharge certain real estate from any lien thereunder. The facts are stated in the opinion. The case was tried before Stanton, J., who made findings as stated in the opinion and ordered judgment in favor of defendants. From an order denying plaintiff's motion for a new trial, he appealed.

*Van Derlip & Lum,* for appellant.
*C. C. McCarthy* and *Thwing & Rossman,* for respondents.

BROWN, C. J.
In January, 1897, defendant Charles H. Marr sold and delivered to plaintiff certain personal property, for which plaintiff promised and agreed to pay the sum of $200. The debt was not paid, and in June, 1899, Marr brought an action in the district court of Itasca

[1] Reported in 139 N. W. 1066.

---

Note.—The authorities on the effect of summons or notice to person by wrong initial are reviewed in a note in 15 L.R.A.(N.S.) 129.

county to recover the same. The summons therein was served on June 22, 1899, by leaving a copy thereof at the house of defendant's usual abode, with a person of suitable discretion, namely, defendant's wife. No appearance was made in the action by defendant, and default judgment was rendered against him on July 13, 1899. In 1901, and again in 1902, executions were issued upon the judgment, and certain real property in which the defendant in the writ had an interest was levied upon and sold, from which no redemption was made. Thereafter, in June, 1910, defendant in that action, plaintiff herein, brought this action to set the judgment aside, on the ground that the summons was not legally served upon him; hence that the court acquired no jurisdiction to render the judgment. Issue was joined, and the cause was tried before the court without a jury. The court found as a fact that the summons in the action had been duly served, and judgment of dismissal was ordered. Plaintiff appealed from an order denying a new trial.

The trial court found that the summons was served upon defendant at the city of Minneapolis, on the 22d day of June, 1899, by handing to and leaving with defendant's wife, at the house of defendant's usual abode, a true and correct copy thereof, together with a copy of the complaint. This finding is challenged, and it is contended that the evidence wholly fails to show: (1) That any service whatever was made upon the wife; and (2) if the service was in fact so made, that the evidence fails to show that it took place at the house of defendant's usual abode.

1. We have carefully examined the record, with the result that sufficient competent evidence is found therein to support the findings of the trial court, and within the rule guiding us in such cases they are sustained. The summons, if served at all, was served by the attorney for the plaintiff in that action, and within a week thereafter he attached an affidavit of the time and manner of the service, namely, by handing to defendant's wife at the house of his usual abode a true and correct copy of the same. The attorney was called as a witness on the trial of this action, and the testimony given by him fully confirmed the prior affidavit of service. He detailed how he found the residence of defendant in the city of Minneapolis, that

he called there, and that the lady who answered stated to him that she was the wife of defendant, and that defendant resided there. The wife appeared in court on the trial of this action, and the attorney identified her as the person with whom he left the summons. The wife testified positively that no service was made upon her; that is, that no copy of the summons was delivered to her by the attorney at any time or place. A sharp conflict in the evidence was thus presented, and the trial court resolved the question in favor of the service. The question of credibility of the witnesses was for the trial judge, and we discover no sufficient reason for disturbing his conclusion. In fact, we think it clear that the court properly disposed of the issue.

The denial by the wife that service was made upon her stands alone, while that the service was in fact so made is strongly corroborated by other disclosed facts and circumstances. It was shown on the trial that, some time after the service is claimed to have been made, an attorney residing in Minneapolis was retained and appeared for defendant therein. He prepared and served an answer, which, having been served after the judgment had been entered, was returned. This evidence was competent and proper, as tending to show that the summons was in fact served as claimed. It is a little difficult to understand why the attorney should appear in the action, if no service of the summons had been made. In fact, plaintiff admitted on the trial of this action that he retained the attorney to look after his interests in that litigation. He did not admit that he knew of the commencement of the action, but did say that he had been informed that one was likely to be brought on the claim made the basis of the action, and he retained the attorney to attend to the matter, if one should be commenced.

Plaintiff further testified that some time during the year 1907 he learned for the first time that judgment had been rendered against him, and that he then, through the assistance of his son, made an examination of all his papers, to learn whether an answer had been interposed by the attorney so retained, but that no information was obtained as the result of their efforts. All this indicates a service for the summons, and leads, also to the conclusion that in denying

the fact of service the wife was mistaken. The service was made nearly 11 years before the commencement of this action, and it is not at all strange that the matter had entirely passed from her mind at the time of the trial. The trial court was justified in so concluding.

2. The further question, namely, whether the service was made at the house of defendant's usual abode, is perhaps not entirely free from doubt, yet we conclude, after a careful reading of the record, that the findings upon this branch of the case must also be sustained. It appears from the evidence that for a number of years prior to the time of the service of the summons plaintiff resided on Chicago avenue in the city of Minneapolis with his wife and family, and it is contended that his residence continued at that place, and was such, at the time of the service of the summons upon the wife; while plaintiff claims that he ceased to reside at the particular place some time in the month of December, 1898, when he left his family and took up his residence in Fargo, North Dakota. Whether plaintiff removed from the state in 1898 was a fair question for the trial court.

At about the time of the service of the summons, plaintiff, though then in North Dakota, was in doubt where he resided. He testified on the trial in reference to some correspondence had by him with the attorney he employed to defend the action against him, and stated that the attorney wrote him that the action was about to be commenced, and inquired whether "I had ever declared myself a resident of Fargo. I says, 'Yes, I am a resident of Fargo, or any way North Dakota or South Dakota. I will be in one or the other; I am undecided whether—if I do not like this place, I may possibly move, but I think I will remain in Fargo.'" This clearly indicates that plaintiff had not acquired a "usual place of abode," as that phrase is understood in the law, in the state of North Dakota at the time when the summons was served, and presumptively his usual place of abode was with his wife and family at Minneapolis, where they had resided for a number of years. Missouri, K. & T. Trust Co. v. Norris, 61 Minn. 256, 63 N. W. 634. His presence in North Dakota at the time was evidently temporary, and for the purpose of finding a suitable location, either in that state or the adjoining state of South

Dakota. The evidence and circumstances of the case, as disclosed by all the testimony, justified the court in so finding.

The wife testified that soon after the plaintiff departed from his Minneapolis home in 1898, as testified to by him, she removed from the residence theretofore occupied by the parties on Chicago avenue in Minneapolis to another building in the same city, but upon another street. Within what has been said, the Chicago avenue residence unless it had been changed, as testified to by the wife, was presumptively the usual abode of defendant at the time the summons was served, for he was then, according to his testimony, undecided where he would locate, and, if served at that place, the service was valid. Whether the wife changed her residence before the date of the service presented a question of fact for the trial judge. He might well have concluded that the witness was mistaken as to the time when she changed her place of residence. Since she was clearly mistaken about the fact of service, it requires no strain to sustain the trial court in believing that she was mistaken in the other matter also. In any event, the evidence is not so clearly against the findings as to justify us in disturbing the conclusion reached. The trial court was confronted with the witnesses, and was in position to judge with some degree of accuracy their credibility—a situation or advantage not afforded this court.

3. Plaintiff's name is David Willard. He was named in the other action as David E. Willard, and the judgment was rendered against him under that name. The addition of the initial "E," to the name was, in view of the character of the service of the summons, an irregularity not going to the jurisdiction of the court. Though defendant was erroneously named in the action, the summons was in fact served upon him, in the manner stated, and there is no room for the contention that he was in any manner misled by the misnomer. The case comes within the rule that an omission, or the use of a wrong initial, in the name of defendant, does not affect the jurisdiction of the court, where the right party is actually served with the summons and thus brought into court. Casper v. Klippen, 61 Minn. 353, 63 N. W. 737, 52 Am. St. 604; D'Autremont v. Anderson Iron Co. 104 Minn. 165, 116 N. W. 357, 17 L.R.A.(N.S.) 236, 124 Am. St.

615, 15 An. Cas. 114. The rule is different where the service is by publication.

The summons in this case was served upon the "right party," namely, plaintiff herein, of which service the record is quite clear, and he had full notice and opportunity to appear and defend the action. This form of service is declared by the statute to be personal service. R. L. 1905, § 4106, and the rule of the D'Autremont case does not apply.

4. We have considered the assignments challenging the rulings of the court on the admission and exclusion of evidence, and discover no error of a nature to justify a new trial.

Order affirmed.