IN RE APPLICATION TO REGISTER TITLE TO CERTAIN LANDS.
STATE v. MINNESOTA POWER & LIGHT COMPANY AND OTHERS.
HELEN T. HOBART AND OTHERS, RESPONDENTS.
HELEN T. HOBART AND OTHERS, APPELLANTS.
ROGER V. WHITESIDE AND OTHERS, APPELLANTS.[1]

January 27, 1956.

Nos. 36,510, 36,511, 36,513.

[1]Reported in 75 N. W. (2d) 386.

238

*Miles Lord,* Attorney General, *Thomas J. Naylor,* County Attorney, and *James G. Nye,* Special Assistant Attorney General, for the State.

*McCabe, Gruber, Clure, Van Evera & Donovan,* for Helen T. Hobart and others, Roger V. Whiteside and others, and Toledo Investment Company and others.

*Lathers, Hoag & Edwards,* for Helen T. Hobart and others.

*Wheeler & Burns,* for Roger V. Whiteside and others.

MAGNEY, COMMISSIONER.

It is the claim of the State of Minnesota that certain lands in St. Louis County here involved were forfeited to it for the non-payment of taxes. After the tax-forfeiture proceedings had been completed, the state conveyed the surface interest in and to the lands to the Huron Land Company but retained the minerals and mineral rights. The lands contain mineral deposits known as taconite. This action arises out of an application by the state to register the title under the Torrens law to the reserved minerals and mineral rights in said lands, claiming ownership of said minerals and mineral rights acquired through valid tax-forfeiture proceedings. Various individuals and corporations filed answers alleging that the tax-forfeiture proceedings, under which the state claims title, were so defective as to be invalid and void and that they, and not the state, are the owners of the minerals and mineral rights involved. The court found in favor of the applicant as to certain of the lands and in favor of defendants as to others. Alternative motions for amended findings or for a new trial were made by applicant and by two groups of defendants, which motions were denied. Three appeals were filed, one by the state and the other two by defendants who deem themselves aggrieved.

As some of the questions raised do not apply to all the lands alike, for convenience they have been divided into six parcels.[2] The state's claimed title to parcel 6 was not challenged and the trial court held that as to that parcel the title to the minerals and mineral rights therein was proper for registration. Some questions raised are common to all the parcels of land except parcel 6, and they will be considered first.

■ On January 28, 1928, the board of county commissioners by resolution designated the Hibbing Daily Tribune as the official newspaper of the county in which the notice and list of real estate remaining delinquent should be published. The delinquent tax list for taxes for the year 1926 was published in the said newspaper according to the statute. The affidavit of publication filed by the publisher contained this statement: "Printed delinquent tax list hereto attached, cut from the columns of said newspaper, was inserted, printed and published in said newspaper for two weeks." In fact, the delinquent tax list was not cut from the columns of the newspaper. Included in some of the 84 pages of the paper which contained the delinquent tax list is also printed other matter such as news and advertising. The affidavit of publication bears filing stamp: "Filed in my office at ____o'clock ____m., March 5, 1928, J. P. Johnson, Clerk Dist Court, By B. G. Rilling, Deputy," and the published list bears a similar stamp.

[2]Parcel 1: SW 1/4 of SE 1/4 and SE 1/4 of SW 1/4, section 13, township 59, range 15.

Parcel 2: SE 1/4 of SE 1/4, section 13, township 59, range 15.

Parcel 3: SW 1/4 of SW 1/4, section 34, township 59, range 15. NE 1/4 of SE 1/4, section 23, township 59, range 15. SW 1/4 of NE 1/4, section 24, township 59, range 15.

Parcel 4: Undivided 1/3 of SE 1/4 of NW 1/4, section 23, township 59, range 15.

Parcel 5: S 1/2 of NW 1/4 and N 1/2 of SW 1/4, section 33, township 59, range 17. SE 1/4 of SW 1/4 and W 1/2 of SE 1/4, section 28, township 59, range 17.

Parcel 6: Undivided 2/3 interest in SE 1/4 of NW 1/4, section 23, township 59, range 15.

Defendants contend that the affidavit of publication is insufficient since it refers to the "list hereto attached, cut from the columns of said newspapers," when as a matter of fact no such list is found. They also contend that the publication is defective in that other printed matter is inserted on pages containing part of the published delinquent tax list; also, that the published delinquent tax list and the affidavit of publication are filed as separate documents without attachment of one to the other to identify the same and their relationship. M. S. A. 279.20 provides:

"The clerk shall attach together and file the list, notice, affidavit of publication, one copy of the newspaper and supplement, if any, in which the notice and list were published, * * *."

They became a part of the judgment roll.

The court found that the delinquent tax list was published substantially as required by statute; that the manner of publishing the same was harmless and without prejudice to the owner; and that no claimed omission or failure was fatal to the jurisdiction in the tax-forfeiture proceedings. It also found that the claim of defendants, that the published delinquent tax list and the affidavit of publication thereof were filed as separate documents without attachment of one to the other to identify the same and their relationship, is not sustained by the evidence, and that the affidavit of publication and the list are identified in their reference to each other. The court also found that in part of the judgment roll, including delinquent tax list for taxes for 1926 and judgment of 1928, there is attached to the newspaper publication of delinquent tax list, and bound in book, duly attached, an affidavit of publication of the printer. On the 12th day of September 1949, on petition by the county auditor, followed by order of the court permitting the filing, a new affidavit of publication of the delinquent tax list was filed with the clerk of the district court setting out all the facts required by statute relative to publication.

The same situation is found relative to the publication of the delinquent tax list for the years 1927, 1929, and 1930 and the affidavits of publication covering same.

Section 279.14 provides:

"When the last publication shall have been made the notice shall be deemed to have been served and the court to have acquired full and complete jurisdiction * * *."

Under this statute there is nothing to indicate that the filing of the affidavit of publication is necessary for the acquisition of jurisdiction.

On January 28, 1928, as stated, the county board adopted a resolution designating the Hibbing Daily Tribune as the newspaper in which the delinquent real property list should be published. Then it "Resolved Further, that this contract * * * is awarded * * * upon the further condition that said R. W. Hitchcock * * * shall cause said delinquent real property list * * * to be printed and published the two times required by law in The Virginia Daily Enterprise * * * without additional expense to the County of St. Louis." Similar resolutions were passed by the board for the years 1929, 1930, and 1931. The clerk of court's register of actions shows filing of "Certified Copy of Resolution of County Board Designating 'The Hibbing Daily Tribune' * * * as the newspaper in which the notices and list of real estate remaining delinquent * * * is to be published." The register of actions makes no reference to the Virginia Daily Enterprise. Defendants say that the record is defective in that there is no proof showing publication for any year of the notice and list in the Enterprise. The resolution itself clearly indicates the Hibbing Daily Tribune as the only official newspaper in which the notice and delinquent list were to be published. The notice and list were actually published in the Hibbing Daily Tribune, the newspaper so designated, and the fact that they were also published in the Virginia Daily Enterprise can have no bearing on jurisdiction and could have no prejudicial effect on the owners.

The important fact is whether the notice and list were published according to law in the designated legal newspaper for such publication. If so, such publication gives the court jurisdiction to render the judgment.

In Hoyt v. Clark, 64 Minn. 139, 142, 66 N. W. 262, 263, this court said:

"* * * The court has jurisdiction to render it [the judgment], if, in fact, the notice and list were published according to law. It was the existence of those facts, and not the affidavit or proof thereof, that gave the court jurisdiction. * * * prior to the publisher doing this [filing the affidavit of publication], the court had jurisdiction of the subject-matter. The filing of this affidavit is not made a condition precedent to the entry and validity of the tax judgment, and, the court having jurisdiction, proof of publication might be made subsequent to the entry of the tax judgment by a proper proceeding therefore."

Board of Co. Commrs. v. Morrison, 22 Minn. 178; Kipp v. Collins, 33 Minn. 394, 23 N. W. 554; Campbell v. Barry, 152 Minn. 13, 187 N. W. 967.

In Bennett v. Blatz, 44 Minn. 56, 46 N. W. 319, it was held that, if proof of publication first filed is defective, the want of it may at any time be supplied. Mr. Justice Mitchell, speaking for the court, said the court could see no reason why this could not be done after as well as before judgment.

In Campbell v. Barry, 152 Minn. 13, 187 N. W. 967, the question of the validity of an affidavit of publication was involved. Before the trial of the case, the court permitted a sufficient affidavit to be filed in the tax proceeding upon an ex parte application, which is the procedure followed in the instant case.

Defendants claim the corrective affidavit is defective in proving publication in that there is no identification as to what notice or what list was published. In our opinion they are sufficiently specific. The new sufficient affidavit filed in the original tax proceedings after the commencement of the trial of the instant action remedied any defect in the original and gave required proof.

As has been stated, after the state had completed its tax-forfeiture proceedings, it conveyed to the Huron Land Company the surface interest to all the lands. Then it proceeded to issue to the Huron company state taconite leases to all the lands. In the years 1942 and 1943, the company filed seven separate applications to have the title to said lands, except minerals and mineral rights, registered

under the Torrens law. The State of Minnesota and the answering defendants in this action were all named parties defendant in the registration proceedings. All the defendants defaulted, and the title to the surface interest in the lands was registered in the name of Huron Land Company. The present application is based on the identical tax-forfeiture proceedings that were involved in the Huron Land Company application to register. The state contends that, because of the above fact, the defendants here are bound by the adjudication in that registration action, which it claims necessarily constituted a judgment sustaining the validity of the very tax forfeitures involved here, and that the state and the other answering defendants are estopped to relitigate in the present proceedings the validity of the tax forfeitures.

The first answer to the state's contentions, and it seems to be a conclusive one, is that the court in a Torrens registration proceeding has no power to grant a defendant affirmative relief and that, therefore, it had no power to determine claimed affirmative rights as between defendants, so as to decree title in one or more defendants, or to order such title registered as to any parcel of said lands. No judgment affirming title in a defendant can be rendered in such a proceeding. He may be entitled to a final judgment but cannot get it in the Torrens proceeding, as was stated in the concurring opinion in Seeger v. Young, 127 Minn. 416, 149 N. W. 735. Mitchell v. Bazille, 216 Minn. 368, 13 N. W. (2d) 20, is to that same effect. It would seem clear, therefore, that the defendants here, under the law as above stated, cannot be bound by the adjudication in the Huron Land Company proceedings and are not estopped to litigate as between themselves and the state, in the present proceedings, the validity of the tax-forfeiture proceedings. In the instant case, the court found the tax-forfeiture proceedings invalid as to certain parcels of land, but following the law as stated in the above cited cases, it did not decree title in the defendants.

■ A second answer to the state's contention is that a judgment in favor of a plaintiff in an action against two or more defendants is not res judicata or conclusive of the rights and liabilities of the

defendants inter se in a subsequent action between them, unless those rights were expressly put in issue in the first action, by cross complaint or other adversary pleadings, or such issues were tried by consent and determined by the judgment in the first action. Bunge v. Yager, 236 Minn. 245, 52 N. W. (2d) 446. The rule is stated in Restatement, Judgments, § 82, as follows:

"The rendition of a judgment in an action does not conclude parties to the action who are not adversaries under the pleadings as to their rights inter se upon matters which they did not litigate, or have an opportunity to litigate, between themselves."

The state and the defendants here were not adversaries in the prior proceedings, and no issue between them was litigated. There was no adjudication between them by consent or otherwise, nor could it have been.

■ The county auditor of St. Louis County posted in his office notices of expiration of time for redemption, all bearing date November 21, 1935, covering delinquent taxes for each of the years 1926, 1927, 1929, and 1930 and a notice bearing date April 22, 1940, covering delinquent taxes for the year 1931. The above are the five years of delinquent taxes with which we are concerned and cover all the lands involved.

The notices set forth descriptions of the parcels of land here involved and other lands. The notices are all in the same form except the one for the year 1931. Typical is the form used in connection with the delinquent taxes for the year 1926. The first page of said notice, designated by the auditor as 0001, sets out that the *"parcels of land hereinafter described"* (italics supplied) were bid in for the state on May 14, 1928, at the tax judgment sale of land for delinquent taxes for the year 1926. Then follows descriptions of parcels of land and names of persons to whom the same are assessed. At the bottom of the page we find the following: "That *the time for redemption of said lands* from said sale will expire one year after service of notice and the filing of proof thereof in my office as provided by law." (Italics supplied.) Beneath is the signature of the county auditor and the impression of his official seal. Then follow pages

0002 to 0772, inclusive, consecutively numbered, containing descriptions of parcels of land and names of persons to whom assessed with proper headings at the top of each page. At the end of the concluding page is found the following statement:

"That time for redemption of said lands *herein before described on said property sheets No. 1 to 0772 incl.* will expire one year after service and the filing of proof thereof in my office as provided." (Italics supplied.)

It is signed by the county auditor and contains the impression of the official seal. The italicized words had been inserted by the use of a typewriter with a type clearly different from the type of the rest of the notice, but apparently the same as that used in typing the date. The interpolation is not found in the notice covering the 1931 taxes.

Defendants contend that the above notice, as well as the rest of them, is defective and void for two reasons: (1) Because of the insertion at the bottom of page 0001 of the auditor's certificate as above set out; and (2) because they claim that the above italicized words in the notice found on the last page were inserted after the posting of the notice. The court found that this claim is not sustained by proof and it is clearly correct in so finding. There is no evidence as to when it was inserted. The notice consists of 772 pages of descriptions and names, bound together permanently in a single volume. There is no suggestion how it could have been handled any other way. The insertion at the bottom of page 0001 of an auditor's certificate, as we see it, could not possibly mislead anyone to thinking that the following 771 pages in the bound volume meant nothing and that they were mere surplusage. The statement at the top of the page speaks of "parcels of land hereinafter described" and at the bottom of the page the notice refers to "said lands," not "said lands above described." In the irregularities we see nothing misleading. Every statutory requirement is found in the notice.

■ On the 19th day of July 1939, after the time for redemption of the lands from the tax-forfeiture proceedings had expired, the county auditor executed his certificates of forfeiture stating that the time for redemption had expired. After the recording of the certificate,

covering the lands tax delinquent for the year 1926, in the office of the register of deeds, the last page was removed and another page was substituted therefor, containing a certificate by the county auditor to the effect that the lands on the attached list, containing pages 1 to 0772, inclusive, were bid in by the state at the tax judgment sale; that the time for redemption thereof had expired; and that absolute title thereto had vested in the State of Minnesota, except as to properties repossessed, eliminated by a line drawn through the description and the name of the party to whom assessed. The last pages of the recorded certificates of expiration of redemption for taxes delinquent for the years 1927, 1929, and 1930 were also removed and new pages substituted. The last page of the recorded certificate for the taxes delinquent for the year 1931 was not tampered with. What the original last page of the certificate contained, no one admits knowing. Who made the substitution and when it was made is not shown by the evidence, but it is conceded that it was made by a county employee or employees of the office of the county auditor who must have had the cooperation of someone in the office of the register of deeds. After the commencement of the trial of this action, and on February 26, 1951, corrective certificates of forfeiture were made by the county auditor, filed in his office, and recorded in the office of the register of deeds. These new certificates of forfeiture covered only the land involved in this action.

Defendants contend that the alteration in the original certificates of forfeiture rendered them void and of no force and effect; that the state has proved no title at all to the lands involved; and that it cannot prevail because of imperfections in, or lack of title in, the owner, unless and until it can show title in itself. They say that, because of the alteration, the objection to their receipt in evidence should have been sustained, and the state would then have had no title to register. The state contends that both the original altered certificates and the new or corrective certificates are valid. It relies on both the old and the new. Defendants argue that the county auditor has no authority to make a corrective certificate to only a part of the descriptions involved in the original certificate.

We fail to see any reason why the county auditor may not execute, file, and record a new corrective certificate as to only a part of the descriptions involved. Here we have for instance 772 pages of description covering lands delinquent for 1926 taxes. If a curable error be found, say as to only one of the descriptions, and such error can be corrected by a new certificate, it would seem poor judgment to require the auditor to make, file, and record a new certificate, comprising 772 pages with 46,000 descriptions, to do so. We hold, therefore, that the new corrective certificates were properly executed, filed, and recorded, and, as no objection can be raised as to the new certificates, except the one already considered, they are valid, effective certificates of forfeiture covering the parcels of land here involved. The trial court found the original recorded certificates valid. In view of our holding relative to the new certificates, it seems unnecessary to determine whether they were. That defects exist is admitted. Furthermore, new certificates as to any or all descriptions could be executed, filed, and recorded if found necessary.

The effect of our holding relative to the new certificates is to make them "prima facie evidence of the facts therein stated" (§ 281.23, subd. 8) as to the parcels of land here involved. Section 281.23, subd. 8, however, has this to say about such certificates:

"* * * but failure to execute or record or file such certificate shall not affect the validity of any proceedings hereunder respecting such lands or the title of the state thereto."

So whether a sufficient or valid certificate of forfeiture is executed, filed, and recorded is of no concern to the owners, defendants here, if the proceedings up to this point are sufficient and valid, the title in fact being in the state. It does affect them, however, when the statute of limitations is invoked as will appear later. When the time for redemption has expired, and no fatal errors are to be found in the prior proceedings, the owner has no longer any interest in the land that the filing of the certificate of forfeiture can affect and therefore cannot be prejudiced. In actions like this, a certificate of forfeiture is prima facie evidence of the facts therein stated. Furthermore, the purpose of recording the certificate in the office of

the register of deeds is chiefly to provide a complete record of the proceedings of sale and it is an important item in the chain of title.

■ The taxes for the year 1926 on four tracts of land in section 33, township 59, range 17, included in parcel 5, were not paid, and tax-forfeiture proceedings followed. The posted notice of expiration of time for redemption named one John *W.* Thomas as the owner being assessed for taxes. In the last assessment records of the county auditor in 1934, effective at the time of the notice, the four tracts of land were officially assessed in the name of John *M.* Thomas. The court held that the failure to name correctly the said John *M.* Thomas as the assessed owner in the notice of expiration of time for redemption made the notice ineffectual and the state did not acquire title to the lands by the forfeiture proceedings. The position of the state is that the defect is not such as would invalidate the proceedings.

In D'Autremont v. Anderson Iron Co. 104 Minn. 165, 116 N. W. 357, 17 L.R.A. (N.S.) 236, a summons in a partition suit was served by publication and designated George *H.* Leslie, a nonresident, as defendant, instead of George *W.* Leslie, his true name. The court held that the publication of the summons directed to George *H.* Leslie did not confer jurisdiction upon the court to adjudicate the rights of George *W.* Leslie. The court stated (104 Minn. 167, 172, 116 N. W. 357, 360) :

"* * * Though the partition suit was a proceeding in rem, the mere fact that the court acquired jurisdiction over the subject-matter thereof, the land, did not authorize it to adjudicate the rights or interest of parties, in the absence of proper service of summons upon them. * * *

\* \* \* \* \*

"* * * If the error in the name is jurisdictional, as we hold, judgment entered is void, * * *."

And in Willard v. Marr, 121 Minn. 23, 139 N. W. 1066, the court held that the use of a wrong initial in the name of the defendant does not affect the jurisdiction of the court where the right party is

actually served with the summons and thus brought into court, but that the rule is different where the service is by publication.

If the question here involved the publication of a summons, the above cases would control and no jurisdiction would have been conferred upon the court. John *M.* Thomas and John *W.* Thomas are two different persons. A middle initial distinguishes between the numerous John Thomases. Here, however, we are not dealing with the acquisition of jurisdiction by means of a summons, and the state contends that the notice of expiration of time for redemption has nothing to do with jurisdiction or due process. It claims that, as the jurisdiction of the owner has already been obtained, it can hardly be said that an error of this kind could be a "jurisdictional defect." Whether this be correct or not, the misnomer was substantially prejudicial to the interests of the owner. In McHardy v. State, 215 Minn. 132, 9 N. W. (2d) 427, we held that the failure of the posted notice of expiration of redemption to designate name of assessed owner as carried in official assessment books rendered the tax-forfeiture proceedings fatally defective.

■ On January 9, 1936, the board of county commissioners designated the Duluth Free Press, a legal newspaper, the "official newspaper" of the county for the year 1936. Thereafter, the county auditor caused to be published in the Duluth News Tribune, not the official newspaper for the county that year, a notice of expiration of time of redemption dated July 18, 1936, as to taxes delinquent for the year 1930. The court found that the notice was not published in the Duluth Free Press and held that the publication in the Duluth News Tribune was in violation of the statute, was prejudicial to the owner, and was fatal to the jurisdiction of the authorities in said proceeding and thus ineffectual. By reason thereof, it held that the forfeiture of said land to the state was void and that the state did not acquire any title thereto in the forfeiture proceedings. This question involves lands in parcel 3, originally owned by the Higgins Wild Cat Company and now owned by Du Nord Land Company.

The state's contention is that under § 284.22, which provides that "The burden of proving that the title of the state, or its successor in

250

interest, is invalid in any such case shall rest upon the party so asserting," the defendant has failed to sustain the burden of proving that the notice was not published in the official newspaper of the county; that the record is devoid of proof that any such notice was published in any such official newspaper; and that therefore the court must presume that such notice was published in the newspaper designated by the county board. Defendant proceeded to prove its contention in the only way possible by negative testimony to the effect that there was a complete absence of any proper publication in the "official newspaper" of the county. If a thing is nonexistent in fact, its nonexistence can be proved in no other way. The affidavit of publication of the notice for the year in question showed publication in the Duluth News Tribune, which as stated was not the official newspaper. No other affidavit of publication is found in the files. All the files for the year 1930 were in evidence. Defendant showed that an adequate search had been made for an affidavit of publication in the official newspaper and none has been found. No such publication has been found either. The court found against the contention of the state. On the record here, it could not properly have found any other way.

■ The state contends that the two irregularities or defects just considered are not "jurisdictional defects" within the meaning of § 284.09 and hence merely acts of omission, and, therefore, barred by the statute of limitations. Defendants say that, although it is one of limitations, the statute cannot take away from the defendants rights that already have become vested. The state claims the statute makes no distinction between irregularities which are prejudicial and those which are not, nor between those subject to the strict compliance rule and those not subject to such rule, and that it limits the right of the owner prior to forfeiture to a challenge of the validity of the forfeiture after one year to those cases where there exists a *jurisdictional defect in the proceedings.* The question then arises whether there can be jurisdictional defects in tax-forfeiture proceedings after the entry of the judgment. There may be fatal defects in the proceedings subsequent to the judgment, and often are, such as

defects substantially prejudicial to the owner, but the question is whether such defects are jurisdictional as we ordinarily use that word. Logically it would seem that, when judgment has been entered after valid procedure up to that point, the question of jurisdiction is no longer involved in the proceedings, and that defects after judgment are ministerial irregularities, which may result in prejudice to the owner, but are not defects that go to jurisdiction as used in § 284.09.

Section 284.22 provides that the title of the state may be held invalid only if the court shall determine that the errors in the proceedings were *fatal to the jurisdiction of the authorities* or that the rights of the owner or other party in interest were substantially prejudiced. A lengthy search, although not an exhaustive one, fails to find the use of the above italicized expression, except in § 284.22 and in two of our decided cases arising after its enactment, McHardy v. State, 215 Minn. 132, 9 N. W. (2d) 427, and State, by Burnquist, v. Child, 235 Minn. 99, 49 N. W. (2d) 638, neither of which involved defects prior to the entry of judgment. In our latest case, State v. Whiteside, 236 Minn. 142, 52 N. W. (2d) 127, the defect consisted of the failure of the auditor to file the resolution designating the newspaper in which the delinquent list and notice of forfeiture sale were to be published and the court held it to be a jurisdictional defect but did not refer to it as "fatal to the jurisdiction of the authorities." That case, of course, involved a defect prior to the entry of judgment. The legislature used the expression "jurisdiction of the authorities" and the word "jurisdiction" in different sections of the same enactment. "Jurisdiction of the authorities," it would seem, must refer to the power of the authorities in charge of tax proceedings to act. Their power to act involves matters requisite to the acquisition of jurisdiction and entry of judgment in tax proceedings, or to those subsequent thereto and unrelated to the court's jurisdiction. The acts of the authorities, or their failure to act, may invalidate the proceedings in either case, but in matters subsequent to judgment, not because of lack of jurisdiction in the commonly accepted use of that word, but because the owner has been sub-

stantially prejudiced. This distinction becomes of importance in connection with the interpretation and application of § 284.09, the one-year statute of limitations already referred to. The statute reads in part:

"* * * The limitations hereof shall apply to all cases where land is claimed to have been forfeited to the state for taxes, except as follows:

"(1) Cases where the alleged forfeiture is invalid because of jurisdictional defects in the proceedings;"

This must refer to jurisdiction in the judicial sense only. If it be said to refer to all fatal defects in the whole tax-forfeiture proceeding, those that arise before and those that arise after judgment, it is given a meaning beyond that of the usual meaning of jurisdiction in the judicial sense. If such be the meaning then no defenses would be barred, because nonprejudicial errors would be no defense in any case. In the instant case, therefore, the defenses as to the use of the wrong middle initial in the notice of expiration of time for redemption, and the publication of same in the wrong newspaper, both defects substantially prejudicial to the owner, would be barred as not being jurisdictional, except for the execution and filing of the new corrective notices of expiration, which the state claims are unassailable, and from which filing the time runs. The state has chosen to file these new certificates, which must be held effective for all purposes, both beneficial and burdensome to the state, including that of starting the running of the statute anew.

The NW 1/4 of the SE 1/4 of section 28, township 59, range 17 (in parcel 5) is crossed by the right-of-way of the Minnesota Power & Light Company. This right-of-way was acquired through condemnation proceedings and a final decree in condemnation entered transferring to the company an interest in the land. Defendant claims that the power company is an occupant of an owner's land and therefore must be served with a notice of expiration of redemption by the sheriff. Since 1925, the company has been the owner of this perpetual pole line easement over the property for the transmission of electric energy. The line consists of "H" frame structures support-

ing three heavy conductors. These "H" frame structures are about 500 feet apart and consist of two poles which are set 11 feet apart, with an average height of 55 feet and are set in the ground 7 feet. They have a 23-foot crossarm. The sheriff made a return that the land was vacant and no service of the notice of expiration of the time for redemption was made on the power company. Defendant insists that it is an occupant and therefore service upon it was a necessity, citing McHardy v. State, 215 Minn. 132, 9 N. W. (2d) 427. The state counters with the proposition that the power company is not an occupant of the land over which the right-of-way was acquired, citing Sanborn v. City of Minneapolis, 35 Minn. 314, 29 N. W. 126. In our opinion, the power company was the occupant of its own property, acquired and paid for, and not an occupant of the land which is subject to the easement. It is the owner of the rights which it possesses in the real estate in question. Since the power company was the owner and occupant of its own property, it was not necessary to serve upon it the notice of the time for expiration of redemption in order to cut off the title of the owner to the forty. The fact that in the application for registration it is stated that the land is occupied by the Minnesota Power & Light Company, under an easement secured by condemnation, is not an admission, as claimed by defendant, that cannot be refuted. That statement does not change the legal status of the actual occupancy. The necessity for the service of the notice on an occupant is that that is one means by which the owner may be notified that his land is about to be forfeited. That reason cannot apply to an easement, where the holder is not occupying the servient estate, but his own property. See Alvin v. Johnson, 241 Minn. 257, 63 N. W. (2d) 22, which has some bearing on the question here involved.

■ . There is a discrepancy between the dates of the published notice and on the posted notice of expiration of time for redemption, affecting certain of the lands in parcel 3. Defendant claims because of that fact invalidity follows. This very question was considered and passed upon in State, by Burnquist, v. Child, 235 Minn. 99, 49 N. W. (2d) 638, and decided contrary to this contention.

Other questions have been discussed in the arguments and briefs but we do not deem it necessary to consider them here.

As we find no reversible error in the decision of the trial court, there must be an affirmance.

Orders affirmed.