*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0735**

In the Matter of the Application of Fischer Sand and Aggregate, LLP

**Filed March 16, 2015
Affirmed
Connolly, Judge**

Dakota County District Court
File No. 19HA-CV-09-5476

Gene Rechtzigel, Apple Valley, Minnesota (pro se appellant)

Matthew S. Duffy, Kristin L. Kingsbury, Monroe Moxness Berg P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Schellhas, Judge; and Connolly, Judge.

## UNPUBLISHED OPINION

**CONNOLLY**, Judge

In this appeal concerning respondent property owner's attempt to register title to its real property, pro se appellant, who owns abutting property and opposes the registration, challenges the district court's determination of the boundary line of the land to be registered and assigns various errors to the district court. We affirm.

**FACTS**

In September 2009, respondent Fischer Sand and Aggregate, LLP[1] filed an application to register three parcels of land under the Torrens Act, Minn. Stat. §§ 508.01-.84 (2014). Respondent is the owner in fee simple of the two parcels referred to by the parties and the district court as "parcel 1" and "parcel 2." The third parcel of land is an "orphaned" strip of land that lies west of parcel 2, referred to by the parties and the district court as "the gap" or "the strip" parcel.[2] Respondent asserted ownership of the gap by adverse possession and sought to quiet title and register the gap along with parcel 1 and parcel 2.

The district court held a hearing on respondent's adverse possession claim to the gap in February 2012. Appellant Gene Rechtzigel, as well as the Evelyn I. Rechtzigel Trust and the Frank H. Rechtzigel Charitable Remainder Trust, objected to respondent's quiet title and registration action in regard to the gap. Appellant was the record owner of the land west of the gap until 1997, when he sold the land to Pulte Homes. Appellant currently owns land adjacent to the gap. At the hearing he testified that he believes he owns the gap and has consistently used and maintained the land as if he did own it.

The district court issued an order in April 2012. The district court determined that neither respondent nor appellant is the record owner of the gap. It also determined that

---

[1] The initial application was filed by Fischer Market Place, LLP but in December 2011 Fischer Market Place, LLP conveyed the land to Fischer Sand and Aggregate, LLP.

[2] The gap parcel is an approximate 19-foot strip of property that was created when imperfect quarter sections (which are usually 160 acres) were laid out in the mid-1800's, resulting in parcels larger than 160 acres. The last known record owner of the gap acquired the land in 1860, and later conveyed the land on either side of the gap, but not the gap itself.

respondent did not provide clear-and-convincing evidence to establish a claim to the gap by adverse possession and denied respondent's request to acquire title to the gap. The district court noted that no party objected to respondent's application with regard to parcel 1 and parcel 2, and granted respondent's application to register those parcels.

After the district court issued the order, appellant filed posttrial motions that challenged the accuracy of the parcel 2 land description. Appellant argued that the true boundary between the gap and parcel 2 is marked by an old fence line. The fence line is approximately three feet farther east than the western boundary provided in parcel 2's legal description. Appellant argued that he owned the land extending to the fence line, and challenged respondent's application to register parcel 2 because it included land that he believed that he owned. Although the fence line was discussed in detail during the first hearing, it appears to us that neither the judge nor the parties realized it had an impact on parcel 2's registration application.

After the hearing on the posttrial motions, the district court issued an amended order in August 2012, granting respondent's request to modify its application[3] and reserving respondent's application to register parcel 2. The district court judge also assigned himself to preside over appellant's application to register the gap and stated he would hear evidence as to the proper legal description of parcel 2 at that time. However, the judge later removed himself from consideration of appellant's proposed registration action at the request of appellant. Nearly a year passed and appellant did not perfect an application to register the gap. On August 2, 2013 respondent moved to amend its

_____

[3] The amended application omitted any claims to the gap.

3

application and complete the registration of parcel 2. The district court granted the motion and scheduled a hearing on the boundary line between parcel 2 and the gap.

A second hearing was held in August 2013. Respondent submitted certified copies of warranty deeds and a report by the Examiner of Titles as evidence that it was the record owner of parcel 2 to the full and complete legal description provided in the application. Russell Damlo and Ray Brandt, licensed surveyors, and William Maurer, a civil engineer, all testified that they had inspected parcel 2 and did not observe any occupational use interfering with parcel 2's western boundary. Damlo prepared surveys of the land and stated that any occupational use would have been noted on a 1997 survey completed by licensed surveyor Delmar Schwanz. He further testified that the legal description in respondent's registration application was consistent with the legal description that had been used in previous surveys, deeds, and transactions involving parcel 2.

Appellant argued that he was the record owner of the gap and that the true boundary between the gap and parcel 2 is an old fence line. The fence is no longer intact, although several fence posts remain. Appellant offered photographs purporting to show the fence line. He also offered a retracement survey prepared by James Bridell, a licensed surveyor, which claimed to establish the location of the fence line. Bridell described the fence line as "highly obliterated." He testified that he retraced the obliterated fence line based on the location of the remaining posts, the elevation of the land, his own intuition and judgment, and input from appellant. The difference between the alleged fence line and the boundary line ranges from six inches to three or four feet.

Appellant further argued that the fence line was a statutory partition fence under Minn. Stat. § 344.02 (2014). Appellant did not present any evidence concerning when the fence was built, who built it, or why it was built. Respondent recalled Ray Brandt as a witness and introduced an opinion letter Brandt prepared that questioned Bridell's methods and conclusions as being contrary to accepted surveying practices.

The district court issued an order in November 2013 that granted respondent's application to register parcel 2. The district court determined that respondent was the record owner in fee simple of parcel 2. It also determined that appellant was not the record owner of the gap, but assumed he had acquired title through adverse possession for purposes of the boundary-line analysis. With respect to the fence, the district court stated that it was convinced a fence did exist at some point, but that appellant did not provide clear-and-convincing evidence as to the location of the fence line. Because respondent established that it was the record owner in fee simple of parcel 2 and no other party had established a legitimate claim to the property, the district court granted respondent's application to register parcel 2. This appeal follows.

## D E C I S I O N

Appellant challenges the district court's determination of the boundary line between parcel 2 and the gap. He asks this court to deny respondent's application to register parcel 2 and find that the fence line is the true boundary between parcel 2 and the gap.[4]

---

[4] Appellant also asks that this court register the gap as Torrens land in his name. Respondent's attempt to register the gap is not before this court, and we cannot decree

5

Although respondent did not seek a determination of boundary lines, a district court may nonetheless fix a boundary line when title and boundary are logically inseparable. *See Application of Hofstad*, 376 N.W.2d 698, 701 (Minn. App. 1985) ("[f]or the [] court to determine ownership . . . it was necessary to fix the boundary between the parcels.").

Appellant's arguments challenge the initial determination of the boundary line, the decision not to establish a boundary by practical location, and allege that various errors resulted in fraud on the court. We address each argument in turn.

## 1.     Initial Determination of the Boundary Line

Appellant argues that the district court "erred in making findings and an order unsupported by the evidence and improperly applying the law as to 'what is the boundary line?'" In boundary-line cases the factual findings of the district court will not be disturbed unless "the evidence taken as a whole furnishes no substantial support for them or where it is manifestly or palpably contrary to the findings." *Engquist v. Wirtjes*, 243 Minn. 502, 506, 68 N.W.2d 412, 416 (1955) (quotation omitted). "Upon appeal the burden is on the appellant to show that there is no substantial evidence reasonably tending to sustain the [district] courts findings." *Gifford v. Vore*, 245 Minn. 432, 434, 72 N.W.2d 625, 627 (1955).

---

title in a defendant in a Torrens proceeding. *See State v. Minn. Power & Light Co.*, 246 Minn. 235, 243, 75 N.W.2d 386, 392 (1956) ("No judgment affirming title in a defendant can be rendered in [a Torrens] proceeding.").

*Fence Line v. Legal Description*

Appellant argues that the fence line should be given priority over the line provided in the legal description. Appellant asserts that "[c]ommon law consistently and strongly states" that in determining boundary lines, artificial boundaries, such as fences, are given priority over courses and distances in a legal description. Appellant's contention is only partially correct. The established rule is that "when identifying boundary lines, fixed and known monuments or objects called for in a legal description found in a deed prevail over given courses and distances; the order of application being first, to natural objects; second, to artificial marks; and, third, to courses and distances." *Magnuson v. Cossette*, 707 N.W.2d 738, 744 (Minn. App. 2006). Thus, artificial objects prevail over courses and distances only when included in a legal description in a deed. Parcel 2's legal description does not contain any reference to the fence line. Therefore, the fence line is not given priority over the courses and distances in the legal description.

*Statutory Partition Fence*

Appellant also argues that the fence line should control because it is a "legal and sufficient" statutory partition fence under Minn. Stat. § 344.02. The district court concluded that appellant's partition fence argument failed "as being contrary to the evidence and statute." "The application of statutes, administrative regulations, and local ordinances to undisputed facts is a legal conclusion and is reviewed de novo." *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 5 (Minn. 2008).

Appellant's contention that the fence is a "legal and sufficient" statutory partition fence is unsupported by the statutory requirements. Appellant bases his argument on

7

Minn. Stat. § 344.02, which lists the kinds of partition fences that qualify as "legal and sufficient." The subsection focuses on the height and material requirements for fences to be valid partition fences. Minn. Stat. § 344.02. However, for a partition fence to be enforceable against heirs and assigns the division must be "made by fence viewers under this chapter" or "made by owners of adjoining lands, in writing, witnessed by two witnesses, signed and acknowledged by the parties, and recorded with the county recorder." Minn. Stat. § 344.08 (2014). Appellant presented no evidence that the fence was made by fence viewers or pursuant to a written and recorded agreement. Therefore, appellant's statutory fence argument fails.

### *Parcel 2's Legal Description*

Appellant argues that the legal descriptions provided by respondent are vague, ambiguous, and cannot be used to establish the boundary line of parcel 2. "As with any written instrument, determination of whether a certificate of title is ambiguous is a question of law." *Matter of Zahradka*, 472 N.W.2d 153, 155 (Minn. App. 1991), *review denied* (Minn. Aug. 29, 1991). "A written instrument is ambiguous if it is reasonably susceptible of more than one interpretation based on its language alone." *Id.*

Parcel 2 is described as "[t]he East 50 Acres of the East Half of the Southwest Quarter of Section 35, Township 115, Range 20 North, Dakota County, Minnesota, excepting therefrom the North 525.00 feet of the South 615.00 feet thereof." The language appears to be unambiguous. Further, the apparently unambiguous meaning of the language in the legal description was verified by two licensed surveyors. Damlo

8

testified that the description was consistent with the description used in previous surveys, deeds, and transactions involving parcel 2.

Moreover, appellant does not argue that the language is susceptible to more than one interpretation. He argues the legal description is ambiguous and defective because it is inconsistent with the purported fence line. The fence line is not mentioned in the deed, and thus has no bearing on the interpretation of the written language. Further, appellant's surveyor stated that in completing his retracement survey he did not survey the land based on the deed, but rather based on where he believed the fence to be. Thus, the conflicting opinions on the location of the boundary are not based on an ambiguity in the language.

Appellant appears to argue that the description is ambiguous because respondent has amended the application and legal description since filing the initial application. However, amendments to applications "may be allowed by the court at any time upon terms that are just and reasonable." Minn. Stat. § 508.09. Respondent moved to amend the application in August 2013, appellant opposed, and the district court granted respondent's motion because it determined it would be just and reasonable to do so. That respondent made a permissible amendment to its application does not render it defective.

### *Retracement Survey*

Appellant argues that because respondent did not submit a retracement survey the registration action should have been denied "because of [respondent's] default of providing a correct legal description of the real boundary line on the surface of the earth." The Torrens Act provides that "[r]eal estate in this state may be registered under the

9

provisions of this chapter in the manner herein provided." Minn. Stat. § 508.01. Appellant does not cite any section of the Torrens Act, Minnesota caselaw, or Minnesota statute that supports his argument that respondent was required to submit a retracement survey. Because the Torrens Act does not require a retracement survey, we see no reason that not providing one would require denial of respondent's registration application.

## 2.    Boundary by Practical Location

Appellant argues that the district court erred in not establishing a boundary by practical location. The doctrine of boundary by practical location transfers title between adjoining landowners when the disseizor can prove one of the following: (1) the disseized, the party against whom a claim of title is made, acquiesced in a practical boundary for a statutory limitations period; (2) the disseized (or predecessor in interest) expressly agreed to a boundary line, and all interested parties then acquiesced in that boundary line for a considerable time; or (3) estoppel. *Theros v. Phillips*, 256 N.W.2d 852, 858 (Minn. 1977). "Because the effect of this doctrine is to divest parties of property they own by deed, the evidence establishing a boundary line by practical location must be clear, positive, and unequivocal." *Britney v. Swan Lake Cabin Corp.*, 795 N.W.2d 867, 872 (Minn. App. 2011) (quotation omitted). The burden of proof is on the party asserting the practical boundary. *Id.* Findings of fact in a boundary dispute are not disturbed unless clearly erroneous. *Allred v. Reed*, 362 N.W.2d 374, 376 (Minn. App. 1985), *review denied* (Minn. Apr. 18, 1985).

Appellant argues that he established that respondent and its predecessors acquiesced to the fence line as the boundary between the properties. "When a fence is

10

claimed to represent a boundary line under an acquiescence theory, one of the most important factors is whether the parties attempted and intended to place the fence as near the dividing line as possible." *Wojahn v. Johnson*, 297 N.W.2d 298, 305 (Minn. 1980). In addition, the line must be "certain, visible, and well-known" to demonstrate acquiescence. *Beardsley v. Crane*, 52 Minn. 537, 546, 54 N.W. 740, 742 (Minn. 1893).

Appellant offered Bridell's testimony and retracement survey to establish the location of the fence line. The district court found that Bridell's methods included "some guesswork and presumption" and that his testimony did not provide clear-and-convincing evidence of the location of the fence line. It also found that "the [fence] posts were so off kilter and bent that it would be speculation to attempt to determine exactly what position they had been in when they were upright and in use." The district court ultimately concluded that there was enough evidence to establish that a fence had existed at some point, but "the fence location is not certain."

Based on the record, the district court's finding that the location of the fence line is uncertain is not clearly erroneous. Bridell described the fence line as "highly obliterated" and relied on his intuition and judgment to retrace the line. His surveying methods and conclusions were called into question by another licensed surveyor. The remaining fence posts were scattered, bent, and not all made of the same material. One was discovered buried under a few inches of soil. Multiple witnesses testified that they had inspected the property and did not observe a fence line. The record provides ample support for the finding that the location of the fence line is uncertain.

A line must be "certain, visible, and well-known" to demonstrate acquiescence in a boundary location. *Beardsley*, 52 Minn. at 546, 54 N.W. at 742. The line in this case is not certain, and only scattered posts are visible. Because the location of the fence line is uncertain, the district court did not err in not establishing a boundary by practical location. *See Theros*, 256 N.W.2d at 859 (stating that there "can hardly be an acquiescence in a boundary line" that is uncertain).

**3.     Other Errors Assigned to the District Court**

Appellant argues various errors committed by the district court resulted in fraud on the court. Only the claims concerning res judicata and collateral estoppel are adequately briefed. An assignment of error in a brief based on "mere assertion" and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection. *State v. Modern Recycling*, 558 N.W.2d 770, 772 (Minn. App. 1997) (quotation omitted). Because we discern no prejudicial error, the inadequately briefed arguments are waived.

Res judicata and collateral estoppel are related doctrines. Once there has been a final judgment on the merits, res judicata prevents parties from relitigating claims that arise from the original circumstances, while collateral estoppel prevents parties from relitigating legal issues that have already been adjudicated. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). A final judgment is defined as one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. *T.A. Schifsky & Sons, Inc. v. Bahr Constr., LLC*, 773 N.W.2d 783, 788 (Minn. 2009).

Appellant argues that the district court's August 2012 order was a final judgment that precludes respondent from "ever doing adverse possession on [a]ppellant again."

The adverse possession ruling was limited to the gap parcel. The gap and parcel 2 have different legal descriptions, and respondent's attempt to register parcel 2 up to its complete legal description did not include any land in the gap parcel. The August 2012 order reserved respondent's application to register parcel 2; therefore it did not end the litigation on the merits and was not final. Because there was no final judgment, collateral estoppel and res judicata do not apply.

In sum, because respondent is the record owner of parcel 2 and the district court did not err in determining the boundary line between parcel 2 and the gap, respondent's application to register parcel 2 was properly approved.

**Affirmed.**

13