CAROLYN B. MOORE v. KENT L. HENRICKSEN.

165 N. W. (2d) 209.

August 23, 1968—No. 40423.

510

*Conrad M. Fredin* and *Reavill, Neimeyer, Johnson, Fredin & Killen,* for appellant.

*Hamerston, Bye & Mitchell,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, Justice.

Appeal from an order denying a motion for a new trial.

This case concerns a dispute as to easements. The property involved is a part of Block 4 of the Longview Addition to Duluth. Block 4 is a rectangle which lies in a generally east-west position. It is bordered on

the north by Second Street, on the west by 23rd Avenue East, on the south by First Street, and on the east by 24th Avenue East.

Block 4 is composed of 20 lots arranged in two tiers, with the 10 lots in the north tier fronting on Second Street and the 10 lots in the south tier fronting on First Street. The northern tier of lots is numbered 1 through 10 from east to west, and the southern tier is numbered 11 through 20 from west to east. Thus Lot 1 lies on the northeast corner of the block and is immediately to the north of Lot 20; Lot 2 lies to the west of Lot 1 and to the north of Lot 19, and so on. Originally there was a public alley 20 feet wide running in an east-west direction through the center of the block. Half of this alley, or 10 feet, encroached on the lots in the northern tier and the other half encroached on the lots in the southern tier. Each lot had a frontage of 40 feet and a depth of 140 feet. In addition the owner of each lot had a latent right to the portion of the public alley which adjoined his lot.

In 1905 Isaac Moore, plaintiff's father and predecessor in title, owned Lots 9 and 10, which are the lots on the western edge of the northern tier. Joseph Cotton, defendant's predecessor in title, owned Lots 5 to 8 and 11 to 14. In that year, Moore transferred to Cotton the portion of Lots 9 and 10 lying within 30 feet of the centerline of the public alley in return for the westerly 30 feet of the northerly 120 feet of Lot 8. Thus Cotton, in addition to his other holdings, held the southern 20 feet, plus the alley, of Lots 9 and 10, and Moore owned a portion of Lot 8.

Moore constructed a house on his property in 1906. He did not, at that time, build a garage. Cotton began to construct a house on his property at the same time but, because it was a very large house, it was not completed and ready for occupancy until 1908.

After Cotton began constructing his house, he found that he would not have room for a driveway within the existing lot lines. Accordingly, he petitioned the Duluth Common Council to vacate the public alley. At the hearing on this petition, no one appeared in opposition except W. J. Holmes, who owned Lot 16. Apparently after hearing Cotton's proposal to dedicate a private easement, Holmes withdrew his opposition. On October 2, 1907, the common council approved vacation of the alley.

On November 30, 1907, Cotton, joined by his wife, created an easement, to be more fully discussed later, which established a private alley over a portion of Block 4.

At about the time he built his house, Cotton put in a concrete driveway off 23rd Avenue and parallel to the south boundary of Moore's property. The north boundary of that driveway is slightly more than 20 feet north of the centerline of the vacated alley and slightly less than 10 feet from the south edge of the Moore property. A paved area extends from the Cotton mansion, which is located on Lots 12, 13, and 14, in a northerly direction until it connects with the driveway.

About 1915 Isaac Moore constructed a garage on the southeast corner of his property which opens out to the south in the direction of the driveway on the Cotton property. At the time Moore built his garage he constructed a ramp connecting his garage with the Cotton driveway. From that time until the incident giving rise to this case, Moore and plaintiff have used the Cotton driveway to gain access to the garage. Neither Moore nor plaintiff asked Cotton or his successors in title for permission to use this driveway. Moore and plaintiff have helped to maintain the driveway and have cut the grass on the area between the north edge of the driveway and the south edge of the Moore property.

In 1937 Cotton brought an action for title registration in which he described the property involved to include the area covered by the driveway and the area between the driveway and the south edge of the Moore property. The application named Isaac Moore, among others, as a defendant, and he was served with a summons. He did not answer. On April 1, 1938, the District Court of St. Louis County registered the property, decreeing that Cotton was the owner subject only to the November 30, 1907, easement, and to other claims not here relevant.

After the Torrens registration, Cotton's property began to change hands, eventually becoming the property of the University of Minnesota, from which defendant, Kent Henricksen, purchased it on public bid on May 18, 1961. He inspected the property in 1960 and in 1961 before he purchased it and knew of the access from the driveway to

plaintiff's garage. He did not inquire of plaintiff as to whether she had any interest in the Cotton property.

Soon after defendant moved onto the property, he and plaintiff began to have differences concerning the condition of the driveway and the advisability of a rezoning petition. The upshot was that in July 1962 defendant barricaded the driveway, thereby denying plaintiff access to her garage. Plaintiff then brought this action in the St. Louis County District Court asking for an order enjoining defendant from blocking access to her garage approach. Defendant answered, denying that plaintiff had any easement, and counterclaimed, asking that plaintiff be enjoined from trespassing. On August 13, 1962, the court issued a temporary restraining order against defendant which remained in effect until judgment was entered in the action. The case came on for hearing before a district judge on September 11, 1964.

On October 4, 1965, the trial court issued findings of fact and conclusions of law in plaintiff's favor and ordered that the temporary restraining order be made permanent. Defendant moved for amended findings and conclusions or for a new trial, in response to which the trial court amended the original order to set forth the findings more fully. He stated that the 1905 exchange between Moore and Cotton was accomplished to provide Cotton with additional land on which to construct a house and that the north edge of the driveway was considered by the parties involved as the boundary line between the Moore and Cotton properties. He concluded that this practical location of the boundary burdened defendant's property with an easement providing access from the driveway to Moore's garage and that continuous use of this easement put defendant on notice of its existence. The trial judge reasoned that Moore's failure to respond to the title registration proceeding was understandable because, in view of the 1907 dedication, he could justifiably assume that the registration was not adverse to his right of access to the garage.

The court held that the November 30, 1907, dedication created an easement across that part of Lots 5 to 14 lying within 20 feet of the centerline of the vacated alley. While it is true that the north edge of the driveway extends more than 20 feet beyond the centerline of the alley, the court found that construction of the driveway "constituted a

practical location of the rights created by the deed [of dedication]."

In a memorandum the judge explained that while the practical location of the boundary would logically give plaintiff title by adverse possession to the entire strip north of the driveway, he was limiting his decree to provide for right of access across this strip. He again issued an order making the temporary restraining order permanent and, except for the amendments actually made, denied defendant's alternative motion.

Defendant appeals from this order. He contends that the court erred in holding that the 1907 dedication created an easement in favor of plaintiff and her predecessors in title; that it erred in holding that the north edge of the driveway constituted the practical location of the boundary; and that, assuming that a prescriptive title was established, it erred in holding that such title survived the 1938 registration decree.

■ Cotton's 1907 dedication provides in relevant part:

"In consideration of the vacation of the alley in Block four (4), * * * by the Common Council of the City of Duluth, the undersigned, Joseph B. Cotton and Louise H. Cotton, his wife, hereby dedicate to the use of the owners, present and future, of said block four (4), * * * or any part thereof, an easement for alley purposes over, across and upon that portion of said block four (4) described as follows, namely: The Northeasterly twenty (20) feet of Lot five (5) in said block four (4), and all that part of Lots five (5) and six (6) in said block four (4) and of said alley therein so vacated which lies within twenty (20) feet of the center of the alley as originally laid out and platted through and across said block four (4)."

The trial court interpreted this dedication as giving a 40-foot easement across all of Cotton's property, including Lots 5 to 14. The dedication thus reaches nearly to the north edge of the driveway, and, as we have seen, the court held that practical location extended it fully to the north edge.

We cannot agree with the trial court's construction of the dedication. As we construe it, it was intended to include only Lots 5 and 6. The trial court apparently read "therein" in the phrase "and of said alley therein so vacated" to refer to "block four," and thus to include

a strip running along the entire length of the alley. But "therein" appears to refer back to "Lots five (5) and six (6)," and it thus includes only that part of the alley appurtenant to Lots 5 and 6. Any other conclusion leads to absurdities. If, as the trial court held, the dedication intended to give access across all of Cotton's lots, why did it refer specifically to Lots 5 and 6? Furthermore, to read the dedication as the trial court did is to read it to provide access across "that part * * * of [the vacated alley] which lies within twenty (20) feet of the center of the alley as originally laid out and platted * * *." The alley as originally platted was 20 feet wide. Thus no part of the alley was more than 10 feet from the center of the alley. We cannot see how one can have a 20-foot easement when the bounds of the easement are described by a monument which extends for only 10 of those 20 feet. This discrepancy can be removed by construing the dedication to include only that part of Lots 5 and 6, and the alley appurtenant to it, which lies within 20 feet of the centerline of the old alley.

Parol evidence reinforces this conclusion. As the trial court found, Cotton sought vacation of the original alley so that he would have more land on which to build his home. The dedication was made to compensate for loss of that alley. It is inconceivable that a man who found a 20-foot alley confining would replace it with a 40-foot easement. Furthermore, at the very time when Cotton was supposedly granting an easement to points 20 feet from the center of the alley, he was constructing his house to within 20 feet of the alley. It is not reasonable to assume that he granted an easement through his house. It is true that Cotton dedicated the easement to all residents of Block 4, but, viewed in the light of Cotton's desire to remove a public alley, such a dedication is exclusive rather than inclusive. It was intended, not in fact to grant an easement to all residents of Block 4, but to exclude members of the public.

Since the court incorrectly concluded that the express easement covered the driveway, it erred in determining that that easement justified plaintiff's use of the driveway. If the use can be justified, it must be on other grounds.

■ Defendant next attacks the trial court's determination that the north edge of the driveway was established by practical location as

the boundary between the Moore and Cotton properties. Such a practical location could have been made before or after the registration decree, since Cotton's application for registration listed only the names of adjoining landowners, and the law in effect at the time provided that a decree would not operate to fix boundaries unless the application listed both the names and post office addresses of adjoining landowners. Mason St. 1927, § 8252; see, Minneapolis & St. L. Ry. Co. v. Ellsworth, 237 Minn. 439, 54 N. W. (2d) 800. The question is thus whether the driveway was established as the practical boundary at any time between 1915 and 1962.

In Minnesota there are only three ways in which the practical location of a boundary may be established:

"(1) The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations; (2) the line must have been expressly agreed upon between the parties claiming the land on both sides thereof and afterward acquiesced in; or (3) the parties whose rights are to be barred must have silently looked on, with knowledge of the true line, while the other party encroached upon it or subjected himself to expense in regard to the land which he would not have had the line been in dispute." Gifford v. Vore, 245 Minn. 432, 436, 72 N. W. (2d) 625, 628.

Since the effect of a practical location of a boundary is to divest one of property to which he has a conceded title by deed, the evidence establishing such a location must be clear, positive, and unequivocal. Fishman v. Nielsen, 237 Minn. 1, 53 N. W. (2d) 553.

Here we cannot see clear, positive, and unequivocal evidence of a practical location. There was no express agreement settling the boundary at the north edge of the driveway. Nor is there evidence of common acquiescence in the driveway as the boundary line. The fact that Cotton's registration application described the land involved to include the strip north of the driveway is at least some indication that he did not regard the driveway as the boundary. At trial, plaintiff implied that she did not regard the driveway as the boundary, for she referred to the strip north of the driveway as "adjoining my land." In her complaint she describes defendant's property as including the strip in

question, and she makes no claim for practical location of a boundary. Furthermore, a driveway, unlike a fence, is not by its nature a boundary marker. It is true that she mowed the grass in the strip, but for all that appears this was nothing more than a token return for a right of passage over the Cotton property. In short, the evidence does not sustain the trial court's finding of a practical location of a boundary.

Since the trial court's stated reasons for granting access across the driveway and from the driveway to the garage lack foundation, that access can be supported only by prescriptive easement. This issue is somewhat complicated by the fact that the trial judge, having decided as he did, had no occasion to make any ultimate finding as to the creation of such an easement. However, the complaint alleged a prescriptive easement, the record was compiled with reference to that issue, and the trial court found all the facts necessary to establish such an easement. He found that the use of the driveway and the passage from driveway to garage was continuous, open, actual, and adverse. He made no finding that it was exclusive, but in view of the fact that the use need only be exclusive as against the community at large, Merrick v. Schleuder, 179 Minn. 228, 228 N. W. 755, there can be no doubt that the use was exclusive. Accordingly, we may view the trial court's finding as an implied finding of a prescriptive easement. Is that finding supported by the evidence?

The principle controlling in this case is stated in Dozier v. Krmpotich, 227 Minn. 503, 507, 35 N. W. (2d) 696, 699, another case in which the claimant made use of a driveway on adjoining property to gain access to his property. We said:

"Where the claimant of an easement by prescription has shown open, visible, continuous, and unmolested use for the statutory period, inconsistent with the rights of the owner of the servient estate and under circumstances from which his knowledge and acquiescence may be inferred, the use will be presumed to be under claim of right and adverse, so as to place on the owner of the servient estate the burden of rebutting the presumption by evidence that the use was permissive."

Defendant, who is the owner of the servient estate, presented no evidence to prove that the use was permissive. Plaintiff's contention

that the owners of the Moore property at no time asked or received permission from the owners of the Cotton property remains uncontested. Cotton clearly acquiesced in the use of his property to gain access to the Moore property, but there is no evidence that he gave his permission. Indeed, in Dozier the evidence of permissiveness was much greater than here, for there the owner of the servient estate had helped the owner of the dominant estate construct the structure which gave the latter access to his property.

Defendant cites cases for the proposition that where an owner opens a way across his land for his own use, the fact that he sees a neighbor or others use it under circumstances which will not interfere with his own use will not justify the inference that the others are proceeding adversely. But those cases appear to involve indiscriminate or causal use of open alleys. In such cases one would infer no more than a license. Here, however, we are concerned with a private driveway. In such a situation the doctrine of Dozier applies. Accordingly, the evidence warrants the trial court's implied finding of a prescriptive easement.

That conclusion brings us to the final issue: Did the decree of registration, made pursuant to an application in which plaintiff's predecessor in title was named as a defendant, cut off the prescriptive easement?

■ Under the Torrens Act no title by prescription can be obtained against the holder of the registration certificate. Minn. St. 508.02. That section is relevant here only in so far as it operates to prevent creation of a new easement if the existing one was destroyed by registration, for Moore began to use the access across Cotton's property some 22 years before Cotton instituted the registration proceeding, and thus the use ripened into title long before the registration.

Minn. St. 508.25 reads in part:

"Every person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration shall hold the same free from all encumbrances and adverse claims, excepting only such estates, mortgages, liens, charges, and interests as

may be noted in the last certificate of title in the office of the registrar, and also excepting [other claims not here relevant]."

Since the prescriptive easement is not recorded on the certificate, defendant is not subject to it unless he did not purchase in good faith.

The obvious intent of the Torrens Act is to confer a conclusive title on the holder of a certificate. Section 508.22 provides that "[e]xcept as herein otherwise provided, every decree of registration shall bind the land described therein, forever quiet the title thereto, and be forever binding and conclusive upon all persons, whether mentioned by name in the summons, or included in the phrase, 'all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real estate described in the application herein,' * * *."

Under this section, the rights of one who is named in the application are cut off by the decree. Isaac Moore was named in the application, and he was served by summons. There is no evidence of fraud. The registration decree's failure to note the prescriptive easement is therefore conclusive against that easement. And plaintiff, as Moore's successor in title, has only such interest as he had.

Since the Cotton property, subsequent to registration, was not burdened with a prescriptive easement, defendant was a good-faith purchaser. To hold otherwise would be to place a purchaser of Torrens property in a less favorable position than the original holder of the certificate. As we have seen, § 508.22 operated to destroy Moore's easement as against Cotton. It would seem absurd to hold that the easement could be revived when Cotton passed title. We know of no case in property law which has held that a grantee has a lesser title than his grantor. See 4 American Law of Property, § 17.11, p. 568, to the effect that under the notice-type recording statutes one buying from a purchaser without notice is protected even though he himself has notice. To hold a grantee subject to claims not good against the grantor would rob the grantor of the fruit of his property right, for it would render his title unmarketable.

The trial court held that Moore's rights survived the registration because, assuming that his access was assured by the 1907 dedication and thus that the registration proceeding was not adverse to his rights,

he justifiably failed to respond to the proceedings. It might be questioned whether such neglect is excusable, for Moore could assume that the 1907 dedication protected his interests only by giving it a decidedly strained interpretation. And beyond that, it is settled that the excusable neglect of one served in a registration proceeding will not relieve him of the effects of his failure to appear. As we said in Murphy v. Borgen, 148 Minn. 375, 377, 182 N. W. 449, 450, authority in a court to grant such relief would conflict with the purpose of the Torrens Act:

"If the statute were construed to grant that authority to the court, the finality of the decree, the fundamental basis, as well as the capstone of the Torrens system of perfecting land titles, would disappear, for just what a court may do to the Torrens judgment on application addressed to its equitable powers will find a limit only in the ingenuity of counsel in searching for and devising methods of attack."

The order is therefore reversed with directions to vacate the injunction. We realize that such a disposition is harsh in this case, but it is a disposition which will have an impact far beyond this case. To hold that the prescriptive easement is good against defendant despite the title registration would create the novel doctrine that a grantee has a lesser title than his grantor and would, in addition, largely destroy the conclusiveness of title which the Torrens Act seeks to attain.

Reversed with directions to vacate the injunction.