RICHARD R. TETRAULT & another[1] vs. MICHAEL M. BRUSCOE
& others[2]
(and two companion cases).

Suffolk.    May 5, 1986. — September 12, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Probate Court,* Jurisdiction. *Land Court,* Jurisdiction. *Jurisdiction,* Probate
Court, Land Court, Equitable. *Real Property,* Registered land, Ease-
ment. *Easement.*

A Probate Court, by virtue of G. L. c. 215, § 6, had concurrent jurisdiction
with the Land Court and the Supreme Judicial Court under G. L. c. 185,
§ 1 (*k*) and (*o*), of an action by the owners of a parcel of registered land
seeking to enjoin trespass by abutting landowners. [457-458]
A Probate Court's equity jurisdiction under G. L. c. 185, § 1 (*k*) and § 1
(*o*), and c. 215, § 6, did not extend to granting affirmative relief to
abutting landowners of registered land by issuing a judgment declaring
that purchasers of the registered land had acquired their parcel subject
to the abutting landowners' preexisting and unrecorded prescriptive ease-
ment over a portion of the land. [458-460]
A Probate Court judge erred in concluding that, in accordance with G. L.
c. 185, § 46, purchasers of previously registered land had acquired their
parcel subject to the abutting landowners' preexisting unregistered and
unrecorded prescriptive easement over a road across a portion of the
registered land, where such an easement was extinguished by the judg-
ment of registration and thus could not fall within any provision of § 46
concerning certain encumbrances which need not be noted on the certifi-
cate of title, and where the judge's finding that one of the purchasers
had acknowledged the existence of the roadway at some point before
or after he purchased the registered land could not support the inference
that the purchasers had actual knowledge at the time of purchase that a
prescriptive easement had ripened in favor of the abutting landowners.
[460-463]

---

[1] Barbara J. Tetrault.

[2] Dorothy M. Bruscoe; Hampshire Division of the Probate and Family
Court Department; the Land Court Department; and the Attorney General.

CIVIL ACTION commenced in the Hampshire Division of the Probate and Family Court Department on May 1, 1978.

The case was heard by *Sean M. Dunphy, J.*

CIVIL ACTION commenced in the Land Court Department on August 8, 1980.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 19, 1983.

Upon transfer of the Probate Court and Land Court proceedings to the Supreme Judicial Court for the county of Suffolk, the cases were reported by *Liacos, J.*

*Howard R. Palmer,* Assistant Attorney General, for the Attorney General & another.

*Ernest P. DeSimone,* Special Assistant Attorney General, for the Hampshire Division of the Probate and Family Court Department.

*Edward E. Watson,* for the plaintiffs, was present but did not argue.

*Henry H. Thayer,* for Massachusetts Conveyancers Association & another, amici curiae, submitted a brief.

LIACOS, J. Henry and Cloma W. Donnis filed a petition in the Land Court in 1968 to register and confirm their title to a parcel of land in Hatfield, Hampshire County. As abutting landowners, the defendants Michael M. Bruscoe and Dorothy M. Bruscoe were notified by registered mail of the Donnises' registration petition, G. L. c. 185, § 39 (1984 ed.). The Bruscoes made no objection to the petition and raised no claims with respect to the land sought to be registered. In July, 1970, the Donnises' title was confirmed and registered. No encumbrances here pertinent were listed on the certificate of title.

In August, 1970, the plaintiffs, Richard R. and Barbara J. Tetrault, purchased a 6.84-acre lot of the registered land from the Donnises, obtaining a transfer certificate of title. A dispute arose subsequently between the Tetraults and the Bruscoes concerning the latter's use of a roadway across a portion of the Tetraults' property.[3] The plaintiffs instituted an action in

---

[3] We gather that from the 1930's on the Bruscoes and other adjoining landowners had made some use of this roadway for purposes of hauling

the Probate Court seeking to enjoin the Bruscoes permanently from entering upon their land and for the recovery of damages for the Bruscoes' trespasses. In defense, the Bruscoes claimed to have an easement by prescription over the roadway across the plaintiffs' land. The probate judge found that the Bruscoes had acquired an easement by prescription which predated the registration of the land by the plaintiffs' predecessors in title. He concluded that the plaintiffs purchased the registered land subject to the Bruscoes' preexisting unregistered and unrecorded easement. A judgment was entered to this effect.

The Attorney General learned of the Probate Court action after judgment had entered, and attempted to intervene. The motion was denied, whereupon the Commonwealth filed a complaint for declaratory judgment in the Land Court. Richard Tetrault and Michael Bruscoe were named as defendants; Barbara J. Tetrault and Dorothy Bruscoe were later joined as party defendants. The Commonwealth sought: (1) an order prohibiting the assistant recorder of Hampshire County from receiving any document or encumbrance arising out of the Probate Court action purporting to affect the plaintiffs' certificate of title; (2) a declaration that the Probate Court is without jurisdiction to encumber a registered parcel of land by declaring that an easement by prescription existed prior to registration proceedings; and (3) a declaration that the Land Court has exclusive jurisdiction over registered land such that any document or encumbrance later affecting a registered parcel of land must be approved by the land registration office or its authorized recorders. See G. L. c. 185, §§ 57, 58 (1984 ed.).

Before the Land Court took any action on the merits of the Commonwealth's suit, the plaintiffs filed a complaint for declaratory judgment in the single justice session of the Supreme Judicial Court seeking substantially similar relief.[4]

gravel and timber. In 1976, six years after the plaintiffs purchased their parcel, the Bruscoes' use of the roadway intensified. They began utilizing large trucks and bulldozers to haul material across the plaintiffs' land.

[4] The plaintiffs' first two prayers for relief tracked in identical language the second and third prayers for relief contained in the Commonwealth's Land Court complaint. In addition, the plaintiffs sought damages from the Assurance Fund. See G. L. c. 185, §§ 99 et seq. (1984 ed.).

Named as defendants were the Bruscoes, the Probate Court where the plaintiffs' earlier suit for injunctive relief was heard, the Land Court, and the Attorney General. In response to the Commonwealth's motion pursuant to G. L. c. 211, § 4A (1984 ed.), the single justice ordered the transfer of the Probate and Land Court actions to the Supreme Judicial Court single justice session. They were docketed together with the declaratory judgment complaint pending before the single justice. After a hearing, the single justice reserved and reported the case, without decision, to the full court for determination "whether jurisdiction over registered land can be exercised.by the Probate Court or whether it is exclusively within the jurisdiction of the Land Court."[5]

General Laws c. 185, § 1 (*a*) (1984 ed.), vests in the Land Court original and exclusive jurisdiction of "[c]omplaints for the confirmation and registration and complaints for the confirmation without registration of title to land and easements or rights in land held and possessed in fee simple within the commonwealth, with power to hear and determine all questions arising upon such petitions, and such other questions as may come before it under this chapter." Section 1 (*k*) of the same chapter provides that the Land Court shall have original jurisdiction concurrent with the Supreme Judicial Court and the

---

[5] The record before us includes the following: the complaints and records of the plaintiffs' Probate Court action, the Commonwealth's Land Court suit, and the plaintiffs' declaratory judgment suit in the Supreme Judicial Court single justice session, an amended statement of agreed facts among all parties except the Bruscoes, and the entire record of the Land Court proceeding with respect to the registration of the land in issue.

Briefs were filed on behalf of the plaintiffs and the Probate Court. The Land Court and the Attorney General submitted a single brief. In addition, the Massachusetts Conveyancers Association and the Abstract Club submitted a brief as amici curiae. The Bruscoes have not filed a brief.

Despite the technical alignment of the parties, there is a commonality of interest between the plaintiffs, the Land Court, and the Attorney General on the one hand, and the Bruscoes and the Probate Court on the other. The amici curiae's brief argues in favor of the plaintiffs' position. At oral argument we heard only from the Assistant Attorney General representing the Land Court and the Attorney General, and the Special Assistant Attorney General representing the Probate Court. The plaintiffs and the Bruscoes were content to leave the task of advocacy to their respective allies.

Superior Court of "[a]ll cases and matters cognizable under the general principles of equity jurisprudence where any right, title or interest in land is involved." Subsequent to the enactment of G. L. c. 185, the Legislature expanded the historically limited equity jurisdiction of the Probate Court, see St. 1963, c. 820, § 1, granting it original and concurrent jurisdiction with the Supreme Judicial Court and the Superior Court of "all cases and matters of equity cognizable under the general principles of equity jurisprudence." G. L. c. 215, § 6 (1984 ed.). See *Konstantopoulos* v. *Whately,* 384 Mass. 123, 127 (1981). Reading G. L. c. 185, § 1 (*k*), in light of G. L. c. 215, § 6, it is clear that the Probate Courts now may hear cases under § 1 (*k*) that previously could only be heard in the Land Court, the Supreme Judicial Court, and the Superior Court.

The plaintiffs' original suit against the Bruscoes was not within the exclusive jurisdiction of the Land Court as defined in § 1 (*a*), as it was not in the nature of a petition for confirmation or registration of land. Rather, it was a suit to enjoin a trespass, and, as such, was cognizable under general equity principles. See *Lyons* v. *Sharpe,* 317 Mass. 283, 284 (1944). Consequently, the Probate Court had jurisdiction under § 1 (*k*) and § 1 (*o*), concurrent with the Supreme Judicial Court and the Superior Court to hear the suit. See G. L. c. 215, § 6; *Anderson* v. *Anderson,* 354 Mass. 565, 567 (1968) (St. 1963, c. 820, amended G. L. c. 215, § 6, to confer on Probate Courts a new and broad equity jurisdiction concurrent with that of the Superior Court); *Cesarone* v. *Femino,* 340 Mass. 638, 639 (1960) (upholding jurisdiction under § 1 [ *k*], by the Superior Court of an equity suit involving ownership of registered land); *Killam* v. *March,* 316 Mass. 646 (1944) (citing § 1 [*k*] as the jurisdictional statute applicable to a bill in equity by owners of registered land to remove a cloud from their title).

Upon determination that the plaintiffs' suit was properly before the Probate Court, it does not follow necessarily that the judge had the power to declare the existence of a prescriptive easement over registered land. The powers in equity of the Probate Court by virtue of G. L. c. 215, § 6, and c. 185, § 1 (*k*), to hear a certain class of cases involving registered land

are circumscribed by the statutory language contained in G. L. c. 185, § 45 (1984 ed.).

Section 45 states that a judgment for confirmation and registration of a land title "shall not be opened . . . by any proceeding at law or in equity." This section establishes the general inviolability of registered land titles. We interpret it to preclude the Probate Court, in the exercise of its equity jurisdiction, from modifying the substance of a Land Court registration decree. The power to enforce does not include the power to modify.

In so concluding, we recognize that a registered title is not entirely immune from attack. Section 45 explicitly provides that "any person deprived of land, or of any estate or interest therein, by a judgment of registration obtained by fraud [may] file a complaint for review within one year after the entry of judgment, provided no innocent purchaser for value has acquired an interest." A complaint for review under § 45 is within the exclusive jurisdiction of the Land Court, however, and must be brought there. *McDonnell* v. *Quirk,* 22 Mass. App. Ct. 126, 129-131 (1986).[6]

Before the Land Court issues a judgment of registration, it first must pass on the validity of asserted encumbrances. See

---

[6] We held in *State Street Bank & Trust Co.* v. *Beale,* 353 Mass. 103 (1967), that, in addition to filing a petition for review under § 45, one who has lost land through a registration decree procured by fraud may bring an equitable action to have a constructive trust imposed in his favor, provided no innocent purchaser for value has acquired an interest. We construed such an action to be distinct from a petition for review under § 45, and thus not subject to the one-year limitation period imposed by that section, because, rather than attacking the registration decree, it acknowledges the decree's validity. *Id.* at 107. As a result, an action seeking to impose a constructive trust on registered land is not within the exclusive jurisdiction of the Land Court, but may be heard by other courts with general equitable jurisdiction, including the Probate Court. See *Kozdras* v. *Land/Vest Properties, Inc.,* 382 Mass. 34, 35 (1980) (appeal from judgment entered in Superior Court ordering conveyance of registered land due to fraud in procuring registration). These cases are not applicable here, as there is no evidence of fraud in the procurement of the registration decree.

We have recognized another mode of attack on the conclusiveness of a Land Court decree. See *Killam* v. *March, supra,* where a claim of actual notice by the purchaser of registered land of an asserted interest in the land was recognizable as being litigable exclusively in the Land Court.

*Johnson* v. *Rosengard,* 299 Mass. 375, 377 (1938). Therefore, a certificate of title represents a determination by the Land Court that only those encumbrances appearing on the certificate are valid. The Legislature has greatly limited the circumstances in which that determination may be challenged. It has further provided, reasonably we think, that any attack on the integrity of a judgment of registration may only be asserted in the Land Court, the forum from which the challenged judgment issued. See *Bell* v. *Eames,* 310 Mass. 642, 645 (1942) (Land Court decrees in subject matters within its jurisdiction cannot be attacked collaterally in other courts).

The probate judge in the instant case exceeded his jurisdiction by issuing a judgment declaring that the Bruscoes have a prescriptive easement over the plaintiff's registered land. Doubtless, the judge had jurisdiction under G. L. c. 185, § 1 (*k*), to grant the injunctive relief requested by the plaintiffs for, had he done so, he merely would have been enforcing the Land Court's judgment of registration. In the alternative, the judge was free to dismiss the complaint based on traditional equitable considerations. See, e.g., *Peters* v. *Archambault,* 361 Mass. 91, 95-96 (1972) (Tauro, C.J., dissenting).[7] He could not, however, grant affirmative relief to the defendants by, in effect, modifying a Land Court registration, and thereby encumbering a registered parcel of land.[8]

Nevertheless, the judge concluded that the plaintiffs purchased their registered land subject to the defendants' easement, which he found had ripened prior to the initiation of registration proceedings by the plaintiffs' predecessor in title. In so doing, the judge cited G. L. c. 185, § 46. He apparently reasoned that a

---

[7] The defendants raised laches as an equitable defense to the Probate Court action, as well as the doctrine of de minimus. The judge did not reach these issues.

[8] When, as in the instant case, a probate judge exercising jurisdiction under G. L. c. 185, § 1 (*k*) and § 1 (*o*), finds himself faced with what he deems a meritorious challenge to a Land Court registration decree, interposed as a defense to an enforcement action, he may dismiss the complaint or, preferably, ask the Chief Administrative Justice to transfer the case to the Land Court for determination. See *Konstantopoulos* v. *Whately, supra* at 129.

prescriptive easement comes within the ambit of § 46's proviso which states, in effect, that a claim or right arising under the laws of the Commonwealth that is not required to appear of record in the registry of deeds in order to be valid against subsequent purchasers need not appear on the certificate of title to affect registered land. See G. L. c. 185, § 46.[9] This argument has been advanced, as well, on appeal in support of the judge's order. We must reject it.

In order to affect registered land as the servient estate, an easement must appear on the certificate of title. See *Goldstein v. Beal,* 317 Mass. 750, 757 (1945); *Dubinsky v. Cama,* 261 Mass. 47, 56-57 (1927). This is so whether the easement in question was granted by deed or acquired by prescription. To hold otherwise would undermine the integrity of the registration system, for over every title would loom the possibility of an undisclosed but valid interest in the land acquired through prescriptive use.

It is also argued that the plaintiffs hold title to their land subject to the Bruscoes' easement, and that the judge's ruling was therefore correct, because, under *Killam v. March,* 316 Mass. 646 (1944), the plaintiffs were not innocent purchasers within the meaning of § 46. Our attention is drawn to the judge's finding that one of the plaintiffs acknowledged the existence of the roadway over which the Bruscoes claimed an easement, and that he learned of it at some point before or after he purchased the registered property. We are told that this finding supports an inference that the plaintiffs had actual knowledge of the unregistered encumbrance. We disagree.

The judge's finding falls short of that required to bring this case within the purview of *Killam v. March, supra,* in at least

---

[9] General Laws c. 185, § 46 (1984 ed.), provides in pertinent part: "Every plaintiff receiving a certificate of title in pursuance of a judgment of registration, and every subsequent purchaser of registered land taking a certificate of title for value and in good faith, shall hold the same free from all encumbrances except those noted on the certificate, and any of the following encumbrances which may be existing:

"First, Liens, claims or rights arising or existing under the laws or constitution of the United States or the statutes of this commonwealth which are not by law required to appear of record in the registry of deeds in order to be valid against subsequent purchasers or encumbrances of record."

two respects. First, he found only that the plaintiffs knew of the roadway across a portion of their land, not that they were aware of the Bruscoes' use of that roadway. Second, the judge did not find that the plaintiffs' knowledge of the roadway was acquired *before* purchasing the land.[10]

The Bruscoes do not contend that the original registration decree was procured by the plaintiffs' predecessor in title through fraud. Therefore, that decree extinguished the Bruscoes' easement as against the plaintiffs' predecessors. The Bruscoes should not be able to revive their interest in the land by the happenstance that a subsequent purchaser of the property had knowledge at some unascertainable time of the easement's prior existence. "To hold otherwise would be to place a purchaser of Torrens property in a less favorable position than the original holder of the certificate. . . . We know of no case in property law which has held that a grantee has a lesser title than his grantor." *Moore* v. *Henricksen,* 282 Minn. 509, 519 (1968). See *Abdullah* v. *Nabhan,* 5 Mass. App. Ct. 774, 775 (1977) (*Killam* and progeny "are limited in their application to a *prior conveyance* of an interest in registered property which, although not appearing in the decree of registration or the certificate of title, has come to the actual notice of a later grantee of the registered property at the time of the conveyance to him" [emphasis added]).

It is not disputed that the Bruscoes received actual notice of the pendency of registration proceedings regarding the land over which they claim an easement. They had an obligation

---

[10] Even if the plaintiffs were aware, at the time they purchased their property, of the Bruscoes' use of the roadway, this would not be dispositive. To acquire an easement over the roadway, the Bruscoes would have had to have maintained continuous prescriptive use since at least 1950, twenty years prior to the registration of the land title and to have asserted the claim in the registration proceeding. See G. L. c. 187, § 2 (1984 ed.); G. L. c. 185, § 53 (1984 ed.) (an easement cannot be acquired by prescription in derogation of a registered title). The plaintiffs were not required to assume prescriptive use of such duration based solely on the Bruscoes' use of the land in 1970, nor were they under any duty to investigate, given that they were purchasers of registered land. Only if the plaintiffs had actual notice at the time of purchase that a prescriptive easement had ripened in the Bruscoes' favor would *Killam* apply.

at that time to assert their claim and, if the claim was determined to be valid by the Land Court, put their interest on record. Since they failed to do so, any rights they may have had in the land have been extinguished by the issuance of a judgment of registration to the plaintiffs' predecessor in title.

Accordingly, the case is remanded to the single justice for entry of an order vacating the judgment of the Probate Court, and for entry of a judgment declaring the rights of the parties, consistent with this opinion, in both of the declaratory judgment proceedings pending before him. As to the relief requested by the plaintiffs, the single justice shall remand the case to the probate judge for consideration of the equitable defenses raised (see note 7, *supra*) with instructions that, if he finds them to be without merit, he is to issue an order enjoining the Bruscoes from entering on the plaintiffs' land. The single justice shall further direct the probate judge to consider the matter of damages arising from the Bruscoes' past trespasses and, if appropriate, to award damages to the plaintiffs.

*So ordered.*