**In the Matter of the Petitions of Randall J. ZAHRADKA, Winifred E. Zahradka, and Robert L. Reiling, William S. Reiling, for an Order Registering Boundaries and Revising Land Descriptions.**

No. C0–90–2557.

Court of Appeals of Minnesota.

June 18, 1991.

Review Denied Aug. 29, 1991.

154 ■■ ■■■■■■

Stuart C. Bear, Chestnut & Brooks, P.A., Minneapolis, for appellants.

Joseph F. Kueppers, Kueppers, Hackel & Kueppers, St. Paul, for respondents.

Considered and decided by KALITOWSKI, P.J., and SHORT and DAVIES, JJ.

## OPINION

KALITOWSKI, Judge.

Appeal is from a judgment entered pursuant to the trial court's order revising the land descriptions contained in the parties' certificates of title so as to exclude a disputed piece of property from appellants' certificate.

## FACTS

This action involves a dispute between adjoining landowners over ownership of a 38′ by 50′ piece of Torrens property located near the southwest corner of Randolph and Snelling Avenue in St. Paul. The disputed property is located on the southern boundary of property currently registered in the names of appellants Randall J. and Winifred E. Zahradka, and on the northern boundary of property registered in the names of respondents Robert L. and William S. Reiling.

The Reilings are the registered owners, under certificate of title number 284369, issued May 8, 1972, of the following described land in Ramsey County:

The South 115.64 feet of the North 255.64 feet of the East 255.64 feet of the Northeast quarter of the Southeast quarter of Section 9, Township 28, Range 23, except the East 50 feet for Snelling Avenue and except the Northerly 38 feet of the Easterly 150 feet thereof.

The Zahradkas are the registered owners, under certificate of title number 344144, issued September 22, 1989, of the following described land in Ramsey County:

The Northerly 38 feet of the Easterly 200 feet of the Southerly 115.64 feet of the Northerly 255.64 feet of the Northeast Quarter of the Southeast Quarter of Section 9, Township 28, Range 23, except the Easterly 50 feet taken for Snelling Avenue.

The land described on both certificates of title and other lands were originally registered as parts of one larger tract. In 1946, the City of St. Paul, then owner of all the land registered in the Torrens proceeding, conveyed to Leo C. Goodrich that part of the registered land now involved in this case.

On April 18, 1946, Goodrich conveyed part of this land. The deed and the certificate of title which the Registrar of Titles subsequently issued to the grantee contained the same land description which now appears on the Reilings' certificate of title number 284369. The Registrar also issued a residue certificate to Goodrich. The residue certificate contained the same land description which now appears on the Zahradkas' certificate of title number 344144.

In 1946, a 36–unit apartment and an ancillary parking lot were constructed on the property described on the Reilings' certificate. The Reilings, as the sole shareholders of Snelling Investment Company, became owners of the property on December 31, 1970. After purchasing the property, the Reilings paved the ancillary parking lot. The parking lot is comprised of both the disputed property and other property owned by the Reilings. Continuously since December 31, 1970, the Reilings have made exclusive and daily use of the disputed

property as a parking area for tenants of their apartment building.

On May 21, 1946, Goodrich conveyed the land described on the Zahradkas' certificate to the Standard Oil Company. On December 7, 1961, the certificate of title in the Standard Oil Company's name was cancelled and a certificate was issued in the name of The American Oil Company (Amoco).

In 1965, Amoco constructed an automobile service station which bordered the disputed property on the east and north. In addition, Amoco erected a 5' redwood fence which, together with the building, separated the disputed property from the service station property.

Rubin Zamansky leased the Amoco property from 1946 through 1979. Zamansky testified at trial that he never maintained the disputed property after 1946, nor did he have occasion to go on the disputed property after that time.

In 1979, the Zahradkas leased the service station property from Amoco. The building and redwood fence constructed in 1965 were in place. In June of 1989 the Zahradkas purchased the property from Amoco.

On June 14, 1989, Randall Zahradka commissioned a survey of the land described in Amoco's certificate of title. The survey indicated that the disputed property was included in Amoco's certificate. Zahradka did not know before that time that Amoco's certificate included the disputed property although he had leased the service station for ten years. The Zahradkas initiated plans to make use of the disputed property and this lawsuit ensued.

### ISSUE

Did the trial court err in determining that certificates of title issued to adjoining landowners included the same property and in applying the doctrine of practical location of boundary line to resolve the disputed ownership?

### ANALYSIS

It is undisputed that the legal description in the Zahradkas' certificate of title clearly and unambiguously includes the disputed property. The trial court concluded that the legal description in the Reilings' certificate was ambiguous and did not exclude the disputed property. We must first determine whether the Reilings' certificate is susceptible of this interpretation.

As with any written instrument, determination of whether a certificate of title is ambiguous is a question of law. *See Employers Liability Assurance Corp. v. Morse,* 261 Minn. 259, 263, 111 N.W.2d 620, 624 (1961). A reviewing court is not bound by the trial court's conclusion as to the existence of an ambiguity. *See Lamb Plumbing & Heating Co. v. Kraus–Anderson,* 296 N.W.2d 859, 862 (Minn. 1980).

A written instrument is ambiguous if it is reasonably susceptible of more than one interpretation based on its language alone. *Collins Truck Lines, Inc. v. Metropolitan Waste Control Comm'n,* 274 N.W.2d 123, 126 (Minn.1979). Thus, we must determine whether the following language is reasonably susceptible of more than one interpretation:

> The South 115.64 feet of the North 255.64 feet of the East 255.64 feet of the Northeast Quarter of the Southeast Quarter of Section 9. Township 28, Range 23, except the East 50 feet for Snelling Avenue and except the Northerly 38 feet of the Easterly 150 feet thereof.

We find this land description ambiguous on its face in that it may or may not include the disputed property. The ambiguity results from the use of two exception clauses in the land description. The description defines a larger parcel from which two smaller parcels are excluded. It is unclear whether the word "thereof" at the end of the second exception clause applies to the main parcel of land minus the 50 feet taken for Snelling Avenue, or to the larger parcel without any diminution by the excluded 50 feet for Snelling Avenue. If the former, the land description contained in the Reilings' certificate would not include the disputed property. If the latter,

the land description would include the disputed property.

Because we conclude the land description in the Reilings' certificate of title can be construed as including the disputed property, it is necessary to resolve the conflict between the Reilings' and the Zahradkas' certificates of title. The trial court found the doctrine of practical location of boundary lines applicable to resolve the question of ownership of the disputed property. We agree.

Minnesota has long recognized the doctrine of practical location of boundary lines. *See Beardsley v. Crane*, 52 Minn. 537, 54 N.W. 740 (1893). A general description of the doctrine is set forth in *Moore v. Henricksen*, 282 Minn. 509, 165 N.W.2d 209 (1968).

In Minnesota there are only three ways in which the practical location of a boundary may be established:

(1) The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations; (2) the line must have been expressly agreed upon between the parties claiming the land on both sides thereof and afterward acquiesced in; or (3) the parties whose rights are to be barred must have silently looked on, with knowledge of the true line, while the other party encroached upon it or subjected himself to expense in regard to the land which he would not have had the line been in dispute.

*Id.* at 516, 165 N.W.2d at 215 (citing *Gifford v. Vore*, 245 Minn. 432, 436, 72 N.W.2d 625, 628 (1955)).

Since the effect of a practical location of a boundary is to divest one of property to which he has a conceded title * * *, the evidence establishing such a location must be clear, positive, and unequivocal.

*Id.*, 165 N.W.2d at 215 (citing *Fishman v. Nielsen*, 237 Minn. 1, 6–7, 53 N.W.2d 553, 556 (1952)). The trial court's determination of a boundary is a fact issue, and is awarded the same deference as any factual determination. *Wojahn v. Johnson*, 297 N.W.2d 298, 303 (Minn.1980).

The trial court found the evidence clear, positive and unequivocal that the Zahradkas and their predecessors had acquiesced in the service station building and fence as the boundary line for the requisite fifteen years. Minn.Stat. § 541.02 (1988). The evidence is sufficient to support this finding.

First, the evidence shows that the Zahradkas and their predecessors made no use nor overt claim of ownership of the disputed property from 1946 through August 1989. The only action they took with respect to the disputed property was construction of the service station building and fence in 1965. This effectively walled off the disputed property from the other land described in the Zahradkas' and their predecessors' certificates of title. Second, the evidence shows that in 1946, an apartment building was constructed on property undisputedly owned by the Reilings' predecessors. At that time, ancillary parking was also laid out on land adjacent to the apartment building, including the disputed property. When the Reilings acquired their property on December 31, 1970, they paved the disputed property. Since that time, the Reilings have made exclusive, daily use of the disputed property as a parking area for tenants of their apartment building. This evidence clearly, positively and unequivocally shows that the boundary lines have been established in the Reilings' favor by the doctrine of practical location.

## DECISION

The trial court properly applied the doctrine of practical location and ordered revision of the land descriptions contained in the parties' certificates of title so as to exclude the disputed property from the Zahradkas' certificate.

Affirmed.