In the Matter of the Petition of Dorothy P. GEIS, single, and Dorothy P. Geis and Jerome A. Geis as Personal Representatives of the Estate of LeRoy F. Geis, Deceased, for an Order Determining Boundaries and Specifying an Easement Location.

No. C7–97–1669.

Court of Appeals of Minnesota.

March 31, 1998.

Review Denied May 28, 1998.

Clinton R. McLagan, McLagan & Lerman, P.A., Mendota Heights, for appellants.

Dennis P. Moriarty, G. Lee Vickerman, Jaspers, Moriarty & Walburg, P.A., Shakopee, for respondent.

Considered and decided by AMUNDSON, P.J., and HARTEN and MANSUR,* JJ.

## OPINION

MARTIN J. MANSUR, Judge.

This action was brought by appellants Dorothy P. Geis and Jerome A. Geis, as a proceeding subsequent to an initial registration of land, pursuant to Minn.Stat. § 508.671. Appellants requested that the trial court: (1) determine the boundary between government lot 3 (owned by appellants) and government lot 4 (owned by respondent); (2) direct the establishment of judicial landmarks on the boundary between government lots 3 and 4; and (3) direct the registrar of titles to remove any reference to a certain document from the memorial to the certificate of title. On appeal from a judgment in favor of re-spondent Kane, appellants argue the trial court erred in concluding their action was not properly brought as a proceeding subsequent to initial registration of land. We affirm.

## FACTS

Appellants own registered land in Scott County, Minnesota, as evidenced by certificate of title number 13006 (registered land). The full legal description of the registered land is as follows:

The South 46 3/8th rods of the North Half of the Northeast Quarter; the Southeast Quarter of the Northeast Quarter Government Lot 3; and that part of Government Lot 2 lying Northerly and Westerly of the following described lines: Commencing at the Northeast corner of said Government Lot 2; thence South 89° 33' 00" West along the North line of said Lot 2 a distance of 191.50 feet to the point of beginning of said line; thence South 46° 32' 54" West a distance of 558.70 feet; thence 43° 19' 00" West a distance of 632.80 feet; thence North 89° 49' 43" West a distance of 478.50 feet; thence South 43° 19' 00" West a distance of 676.50 feet; thence North 89° 43' 33" West a distance of 324 feet more or less to the shoreline of Carls Lake (McMahon Lake) and there terminating.

SUBJECT to the rights of the State of Minnesota, if any, to the bed of McMahon Lake; not intending however, to deprive the applicant of the ownership of the bed of a non-navigable body of water; nor the usual riparian rights that attach to land riparian to a navigable public body of water, incident to the ownership thereof, and the State of Minnesota thereof shall have no right, title or interest in all that portion of said property lying above contour elevation 959.2 Scott County Minnesota Highway Datum based upon Bench Mark water table sill Southwest corner barn, Joe Shea's having Bench Mark 989.49, based upon measurement by William Schmokel, Registered Land Surveyor of March 22, 1974.

Frank Farrell, appellants' predecessor in title, registered appellants' land in 1974. Pri-

or to registration, Farrell had the land surveyed by William J. Schmokel, a registered land surveyor and the Scott County Surveyor. The Schmokel survey concluded that the north-south quarter line of section 36 should be extended in a straight line to McMahon Lake. This resulted in government lot 3 having no shoreline on the lake.

Respondent owns adjoining land, located in Scott County, Minnesota, legally described as East Half of Government Lot 4, Section 36, Township 114, Range 22, Scott County Minnesota. This property is abstract property and has been continuously owned by respondent's family for approximately 100 years.

In 1994, Steven Geis approached James Kane about purchasing Government Lot 4, however, the Kane family refused to sell. Around the same time, Steven Geis commissioned a survey of appellants' land and hired Bruce W. Shepperd, a registered land surveyor, to conduct the survey. Shepperd concluded government lot 3 was incorrectly surveyed by Schmokel in 1974, and that government lot 3's boundary line with lot 4 should deflect from where it intersects the meander line into the center of the lake. Based on this survey, government lot 3 would have access to the lakeshore.

Appellants brought a proceeding subsequent to the initial registration of land pursuant to Minn.Stat. § 508.671, in part to determine the boundary lines of government lots 3 and 4. Appellants requested that the trial court establish the common boundary line between government lots 3 and 4 in a manner that would provide government lot 3 with riparian rights to McMahon Lake. Although the trial court agreed appellants' survey was correct, it concluded appellants' action was inappropriate and denied their request to establish judicial landmarks on the boundary between government lots 3 and 4. Appellants appealed from the trial court's judgment.

## ISSUE

Did the trial court err in concluding appellants could not judicially establish the boundary lines between government lots 3 and 4 in a proceeding subsequent to initial registration of land?

## ANALYSIS

On appeal from a judgment, this court's scope of review is limited to determining whether the trial court's factual findings are clearly erroneous and whether the trial court erred in its legal conclusions. *Citizens State Bank v. Leth,* 450 N.W.2d 923, 925 (Minn. App.1990). When the evidence reasonably supports the trial court's findings, we must affirm. *Hilton v. Nelsen,* 283 N.W.2d 877, 881 (Minn.1979). Statutory interpretation is a question of law, which we review de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn. 1985).

■ Registration of titles is authorized and regulated by chapter 508 of the Minnesota statutes. *Konantz v. Stein,* 283 Minn. 33, 37, 167 N.W.2d 1, 5 (1969). The purpose of the torrens law is to establish an indefeasible title, which is immune from future adverse claims and encumbrances not noted on the certificate. *Id.,* 167 N.W.2d at 5; *Moore v. Henricksen,* 282 Minn. 509, 519, 165 N.W.2d 209, 217 (1968); *In re Petition of McGinnis,* 536 N.W.2d 33, 35 (Minn.App.1995), *review denied* (Minn. Oct. 27, 1995). By affording a method of acquiring a decree of registration and a certificate of title free from all adverse claims and encumbrances not noted on the certificate, the torrens law confers a conclusive title on the holder of a certificate. *Moore,* 282 Minn. at 519, 165 N.W.2d at 217; *see also In re Petition of Alchemedes/Brookwood, Ltd. Partnership,* 546 N.W.2d 41, 42 (Minn.App.1996) (concluding persons dealing with registered property need look no further than certificate of title for any transactions that might affect land), *review denied* (Minn. June 7, 1996).

Every person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration shall hold it free from all encumbrances and adverse claims, excepting only the estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the office of the registrar, and

also excepting any of the following rights or encumbrances subsisting against it, if any:

(1) liens, claims, or rights arising or existing under the laws or the constitution of the United States, which this state cannot require to appear of record;

(2) the lien of any real property tax or special assessment for which the land has not been sold at the date of the certificate of title;

(3) any lease for a period not exceeding three years when there is actual occupation of the premises thereunder;

(4) all rights in public highways upon the land;

(5) the right of appeal, or right to appear and contest the application, as is allowed by this chapter;

(6) the rights of any person in possession under deed or contract for deed from the owner of the certificate of title; and

(7) any outstanding mechanics lien rights which may exist under sections 514.01 to 514.17.

Minn.Stat. § 508.25 (1996). Despite the conclusiveness of torrens registration, numerous sections in chapter 508 allow individuals to bring proceedings subsequent to the initial registration of land.[1]

■ Appellants argue the trial court erred by refusing to order judicial landmarks placed on the boundary common to government lots 3 and 4 pursuant to Minn.Stat. § 508.671. We disagree.

Boundary line determinations in proceedings subsequent are authorized and governed by Minn.Stat. § 508.671, which provides in pertinent part:

**Subdivision 1. Petition.** An owner of registered land may apply by a duly verified petition to the court to have all or some of the boundary lines judicially determined. The petition shall contain the full names and post office addresses of all owners of adjoining lands which are in any manner affected by the boundary determination. * * *.The owner shall have the premises surveyed by a registered land surveyor and shall file in the proceedings a plat of the survey showing the correct location of the boundary line or lines to be determined. * * *

**Subd. 2. Order.** Before the issuance of any final order determining the location of the owner's boundary lines, the court shall fix and establish the boundaries and direct the establishment of judicial landmarks in the manner provided by section 559.25. The final order shall make reference to the boundary lines that have determined and to the location of the judicial landmarks that mark the boundary lines.

Minn.Stat. § 508.671 (1996). While Minn. Stat. § 508.671 provides for the determination of boundary lines after land has been registered, courts may only determine the boundary lines to land actually registered and described in the certificate of title. *See* Minn.Stat. § 508.06(3) (1996) (providing application for registration of land shall set forth substantially correct description of land); Minn.Stat. § 508.22 (1996) (providing every decree of registration *shall bind land described in it,* forever quiet title to it, and be forever binding and conclusive upon all persons) (emphasis added); *see, e.g., Moore,* 282 Minn. at 518–19, 165 N.W.2d at 217 (concluding failure to note prescriptive easement in registration decree is conclusive against easement).

■ Moreover, a court may not, in a proceeding subsequent to initial registration of land, determine boundary lines, if that determination alters the legal description of the land as stated in the certificate of title, and thereby attacks the torrens certificate. *See Minneapolis & St. Louis Ry. Co. v. Ellsworth,* 237 Minn. 439, 444–45, 54 N.W.2d 800, 803–04 (1952) (concluding trial court's findings in action to determine boundary lines not erroneous because finding of location of boundary line does not attack torrens certificate and judgment does not attack torrens decree); *Park Elm Homeowner's Ass'n v. Mooney,* 398 N.W.2d 643, 647 (Minn.App.

---

1. *See* Minn.Stat. §§ 508.44, 508.45, 508.58, 508.59, 508.62, 508.67, 508.671, 508.70, 508.71 and 508.73.

1987) (concluding appellant's title extended to low water mark, as indicated by certificate of title, and plat of property, and therefore trial court lacked authority to grant respondent ownership rights in part of appellant's property in derogation of torrens act). To allow courts to do so would be contrary to the underlying purposes of the torrens act. *See C.S. McCrossan, Inc. v. Builders Fin. Co.,* 304 Minn. 538, 544, 232 N.W.2d 15, 19 (1975) (concluding purpose behind torrens registration is that certificate of title, including memorials thereon, be made conclusive evidence of all matters contained therein); *Estate of Koester v. Hale,* 297 Minn. 387, 393, 211 N.W.2d 778, 781–82 (1973) (concluding plain meaning of torrens provisions is that they are intended to prevent unjust enrichment that otherwise would necessarily result if purchaser of registered land obtained more land than was owned, claimed, or possessed by predecessor in title who registered land).

■ Appellants ask this court to direct the trial court to establish the boundary line between government lots 3 and 4 in a manner that is consistent with the Shepperd survey. We decline to do so. The evidence before the trial court demonstrated the legal description of appellants' property, as established in the torrens proceeding, does not include any land on government lot 4. Although appellants claim ownership of their land is based on the Shepperd survey, this survey encompasses land on government lot 4 and therefore, not included on appellants' certificate of title. While appellants argue a judicial determination of their boundary lines would not result in taking any part of government lot 4, they offered no evidence explaining the differences between the legal description as stated in their certificate of title, and the measurements contained in the Shepperd survey, other than to urge this court they are both the same. Thus, establishing the boundary lines in a manner consistent with the Shepperd survey would necessarily alter the legal description of appellants' land, and therefore constitute an attack on the torrens certificate. Given the purposes of the torrens act and the unique facts of this case, we conclude the trial court did not err by denying appellants' request to judicially determine boundaries. *See Fidelity & Deposit Co. v. Riopelle,* 298 Minn. 417, 421, 216 N.W.2d 674, 677 (1974) (concluding not all controversies arising out of ownership or claims of different parties to registered land are to be settled in summary proceeding subsequent to original registration); *see also Hilton,* 283 N.W.2d at 881 (concluding when evidence reasonably supports court's findings reviewing court must affirm).

## DECISION

The trial court did not err in concluding appellants' action was not properly brought as a proceeding subsequent to initial registration of land pursuant to Minn.Stat. § 508.671.

**Affirmed.**

AMUNDSON, Judge (dissenting).

I respectfully dissent. This case was tried as a boundary dispute. The gravamen of the action is the proper manner to determine the boundary line between two adjacent government lots. These lots abut a meandered lake, which had little appreciable reliction or accretion. Appellants' land was registered without a judicial determination of boundaries. Respondents' land was not registered. The trial court determined that the disputed line deflected at the meander line to a point in the middle of the lake as shown on one of the surveys. Neither party disputes this decision on appeal.

The trial court, however, appeared concerned that this decision would deprive respondents of land they had occupied for many years. The trial court concluded that because appellants' land was registered, respondents had no defense to this proceeding subsequent to a boundary determination. The court determined that if appellants' predecessor in title had determined the boundaries in the original registration, respondents would have had those defenses.

The basic premise of the trial court is incorrect. Respondents could have counterclaimed for a reformation of the description on appellants' certificate of title on the quit claim deed they gave Farrell prior to regis-

tration. They did not. Respondents obviously thought they could win on the strength of their expert surveyor. The case was tried as a survey dispute and not as a reformation action, which presumably would have been tried differently by appellants.

Minnesota law, in the torrens statute, makes an order for judicial landmarks mandatory. *See* Minn.Stat. § 508.671, subd. 2 (1996) (providing court shall file and establish boundaries and direct establishment of judicial landmarks). Prior to 1986, boundaries of registered land were determined by Minn. Stat. §§ 559.23, 559.24, and 559.25. It is important to note Minn.Stat. § 559.25 does not require judicial landmarks. The language in this statute is permissive and states in relevant part:

> The judgment shall locate and define the boundary lines involved by reference to well-known permanent landmarks, and, if it shall be deemed for the interest of the parties, after the entry of judgment, the court *may* direct a competent surveyor to establish a permanent stone or iron landmark in accordance with the judgment, from which future surveys of the land embraced in the judgment shall be made.

Minn.Stat. § 559.25 (1996) (emphasis added). However, the language added to section 508.671 in 1986 is mandatory and requires:

> Before the issuance of any final order determining the location of the owner's boundary lines, the court *shall* fix and establish the boundaries and direct the establishment of judicial landmarks in the manner provided by section 559.25.

Minn.Stat. § 508.671, subd. 2 (emphasis added). In this case, the trial court must follow section 508.671, which specifically states the court "shall" order judicial landmarks.

Because Minn.Stat. § 508.671, subd. 2 requires the court to direct the establishment of judicial landmarks, the question arises: Where should those monuments be placed? In this case we ask: If title to land is registered without judicial determination of the boundary, can the land then be ground-located either by an erroneous survey or the unstated intention of the registrant? I think not. The act of registration is not a conveyance and thus even if the description is am-

biguous there is no support for the inclusion of evidence of parties' intent. The trial court properly found that the common boundary between Lots 3 and 4 is the line shown on the Sheppard survey. This is not disputed on appeal. Respondents' only claim is to the east line of Government Lot 4. There is only one east line of Government Lot 4. Judicial landmarks should be set on the line shown by the Sheppard survey, the line that defines the westerly line of the land described on appellants' certificate of title.

Were appellants avoiding possible defenses in this proceeding subsequent which would have been available to respondents in the original registration action? The trial court seemed convinced and by a memorandum accompanying the findings, stated:

> If a claim was made at [the] * * * time of the original registration it is possible they would have had a defense to the registration based on adverse possession or boundary by practical location. * * *
>
> By seeking to acquire the land by a proceeding [sic] subsequent, the Petitioner has avoided these possible defenses.

(citations omitted.) In fact, of course, respondents had their options. They could have counterclaimed for practical location of the boundaries, reformation of the description on the quit claim deed, or for a reformation of the description on appellants' certificate of title. They did none of these things. Respondents chose not to attack the description on the quit claim deed or on appellants' certificate of title. The statute provides for reformation of a written instrument:

> (a) Before a court of equity will interfere to reform a written instrument it must appear, substantially as alleged in the pleadings, that there was in fact a valid agreement sufficiently expressing in terms the real intention of the parties; that there was in fact a written contract which failed to express such true intention; and that this failure was due to mutual mistake, or to mistake of one side and fraud or inequitable conduct of the other. (b) These facts must be established by competent evidence, which is consistent and not contradictory, clear and not equivocal, convincing

and not doubtful. Mere preponderance of testimony is not sufficient. (c) Such relief will be extended to those only who have not by their own conduct (as laches, negligence, or otherwise) put themselves in such a position as to render it unjust to change the situation, especially when such change might injuriously affect the rights or status of innocent third parties.

*Fritz v. Fritz,* 94 Minn. 264, 266, 102 N.W. 705, 706 (1905). In fact, a certificate of title may be altered by order of the court upon any reasonable ground. Minn.Stat. § 508.71, subd. 2 (1996); *see also Nolan v. Stuebner,* 429 N.W.2d 918, 924 (Minn.App.1988) (affirming trial court alteration of certificate of title which amended easement and reformed certificate of title), *review denied* (Minn. Dec. 16, 1988).

Appellants did not ask the court to amend the deed or the certificate of title, and the trial court erred when it held that appellants avoided possible defenses by bringing a proceeding subsequent rather than an original registration. Appellants ignored their possible defenses and elected to try the case as a dispute over the proper method of surveying this riparian land. Judgment should be reversed.